CAROL A. IGOE (SBN 267673)
KYRSTEN B. SKOGSTAD (SBN 281583)
NICOLE J. DARO (SBN 2769480
CALIFORNIA NURSES ASSOCIATION
155 Grand Ave.
Oakland, CA 94612
(510) 273-2200 (telephone)
(510) 663-4822 (facsimile)
cigoe@calnurses.org
kskogstad@calnurses.org
ndaro@calnurses.org
Attorneys for Plaintiff
CALIFORNIA NURSES ASSOCIATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et. al.*,<br><br>          Debtors and Debtors in Possession.<br>_____<br><br>CALIFORNIA NURSES ASSOCIATION (CNA)<br><br>          Plaintiff,<br><br>v.<br><br>VERITY HEALTH SYSTEMS OF CALIFORNIA, INC., a California Corporation; ST. FRANCIS MEDICAL CENTER, an Affiliate; ST. VINCENT | Dist. Case No.<br>Lead Bk Case No. 2:18-bk-20151-ER<br>Chapter 11<br>Adv. Proc No. 2:20-ap-1051-ER<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR WITHDRAWAL OF REFERNCE OF ADVERSAY PROCEEDINGS PENDING IN BANKRUPTCY COURT**<br><br><u>Hearing:</u><br><br>Date:     to be determined<br>Time:     to be determined<br>Courtroom: to be determined<br><br>Assigned to the Honorable (unknown) |

MEDICAL CENTER, an Affiliate;        )
SETON MEDICAL CENTER, an             )
Affiliate; ST. FRANCIS MEDICAL       )
CENTER OF LYNWOOD, an Affiliate;     )
ST. VINCENT DIALYSIS CENTER,         )
INC., an Affiliate; VERITY           )
HOLDINGS, LLC, an Affiliate;         )
DEPAUL VENTURES, LLC, an             )
Affiliate; RICHARD ADCOCK, an        )
Individual; STEVEN SHARRER, an       )
Individual, and DOES 1 through 500,  )
                                     )
                    Defendants.      )
_____)

2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................ 9

II.   FACTS ................................................................. 10

III.  ARGUMENT ........................................................... 15

    A.   Withdrawal of the Reference Is Mandatory ...................................... 15

        1.   Legal Sufficiency of Institutional Defendants' WARN Act Notices ......................................................... 17

        2.   Legal Issues Regarding Timing of Amendments to Prior WARN Notices ............................................... 18

        3.   Joint and Several Liability Among Multiple Related Entities ............................................................. 19

    B.   Cause Exists for Permissive Withdrawal of the Reference............... 20

        1.   Plaintiff's Complaint Arises Entirely Outside of the Bankruptcy Statute and so Consists of Non-Core Claims...... 20

        2.   Permissive Withdrawal Would Support the Efficient Use of Judicial Resources.................................................... 23

        3.   Withdrawal of the Reference Would Not Increase Delay or Costs to the Parties.................................................. 24

        4.   Withdrawal of the Reference Does Not Implicate Uniform Administration of Bankruptcy Law ......................... 25

        5.   Permissive Withdrawal Does Not Implicate Forum Shopping ............................................................. 25

IV.   CONCLUSION............................................................ 26

3

# TABLE OF AUTHORITIES

Page

CASES

*Air Line Pilots Ass'n Int'l v. Pension Ben. Guar. Corp.*
   *(In re United Air Lines, Inc.)*
337 B.R. 904 (N.D. Ill. 2006) ................................................................... 22

*Blixseth v. Brown*
470 B.R. 562 (D. Mont. 2012) ................................................................. 23

*Carlberg v. Guam Indus. Servs.*
2017 U.S. Dist. LEXIS 164619 (D. Guam 2017) ................................... 24

*County of L.A. Tax Collector v. Bank of Am.*
2:10-cv-03536-SVW (C.D. Cal. June 29, 2010) ............................... 15, 18

*Granfinanciera, S.A. v. Nordberg*
109 S. Ct. 2782 (1989) .............................................................................. 23

*Green v. FDIC (In re Tamalpais Bancorp)*
451 B.R. 6 (N.D. Cal. 2011) ..................................................................... 22

*Gumport v. Growth Fin. Corp. (In re Transcon Lines)*
121 B.R. 837 (C.D. Cal. 1990) ................................................................. 24

*Henderson v. Bank of Am. N.A. (In re Simmons)*
510 B.R. 76 (Bankr. S.D. Miss. 2014) ..................................................... 21

*In re Dana Corp.*
379 B.R. 449 (S.D.N.Y. 2007) ............................................................ 17, 19

*In re Fraser's Boiler Serv.*
2019 U.S. Dist. LEXIS 37840 (W.D. Wash. Mar. 8, 2019) ................... 21

*In re Colorado Energy Supply*
728 F.2d 1283 (10th Cir. 1984) ................................................................ 21

*In re St. Mary Hosp.*
115 B.R. 495 (E.D. Pa. 1990) ............................................................... 17

*In re White Motor Corp.*
42 B.R. 693 (N.D. Ohio 1984) ............................................................... 16

*Int'l Bhd. of Teamsters v. Amer. Delivery Serv. Co.*
50 F.3d 770 (9th Cir. 1995) .................................................................. 19

*Johnson v. First NLC Fin. Servs., LLC (In re First NLC Fin. Servs., LLC)*
410 B.R. 726 (Bankr. S.D. Fla. 2008) ................................................... 21

*Local 397 v. Midwest Fasteners, Inc.*
779 F. Supp. 788 (D. N.J 1992) ............................................................ 19

*Local 1239 Int'l Bhd. of Boilermakers v. Allsteel, Inc.*
1996 Dist. LEXIS 4829 (N.D. Ill. 1996) ............................................... 18

*McMahon v. Providence Capital Enters., Inc. (In re McMahon)*
222 B.R. 205 (S.D.N.Y. 1998) .............................................................. 25

*Oakview Terrace. v. Owens Fin. Group (In re Oakview Terrace)*
1994 U.S. Dist. LEXIS 825 (N.D. Cal. Jan. 25, 1994) .......................... 21

*Rogers v. Sugar Tree Prods.*
7 F.3d 577 (7th Cir. 1993) ................................................................... 20

*Security Farms v. Int'l Bhd. Of Teamsters*
124 F.3d 999 (9th Cir. 1997) ........................................................ 15, 20

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
454 B.R. 307 (S.D.N.Y. 2011) .............................................................. 16

*Shugrne v. Air Line Pilot's Ass'n. Int'l (In re Ionosphere Clubs, Inc.)*
922 F.2d 984 (2d Cir. 1990) ................................................................. 15

*Stern v. Marshall*
564 U.S. 462 (2011) ............................................................................. 23

*United Nat'l Ins. Co. v. Vicars Ins. Agency (In re Vicars Ins. Agency)*

96 F.3d 949 (7th Cir. 1996) ................................................................ 15

*Verity Health System of Cal. v. Chaudhuri*
2:20-cv-00613-DSF, Dkt. No 23 (C.D. Cal. March 5, 2020) ............................... 23

*Wholesale & Retail Food Distribution Local 63 v. Santa Fe Terminal Servs.*
826 F. Supp 326 (C.D. Cal. 1993) ........................................................ 19

*Wisdom v. Gugino (In re Wisdom)*
2015 Bankr. LEXIS 1532 (Bankr. D. Idaho May 5, 2015) ................................ 22

FEDERAL STATUTES

28 U.S.C. § 157(d) ....................................................... 7, 9, 15, 16, 20

28 U.S.C. § 157(e) ........................................................................ 24

WARN Act

29 U.S.C. § 2101 et. seq. ............................................................ passim

29 U.S.C. § 2102 .......................................................................... 16

29 U.S.C. § 2102(b)(2)(A) ................................................................ 18

CALIFORNIA STATUTES

Cal Lab. Code § 1400, *et. seq.* ......................................................... 18

Cal Civ. Pro. § 592 ...................................................................... 24

OTHER AUTHORITIES

Alan N. Resnick, et. al, eds.. *1 Collier on Bankruptcy* (16th ed. 2010 supp.) ....... 16

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on a date and time to be set upon assignment of this matter to a District Judge, plaintiffs in the above-captioned action (collectively, "Plaintiffs"), will, and hereby do, move this Court for an order immediately withdrawing, for all purposes, the reference of this action to the United States Bankruptcy Court for the Central District of California in which the Chapter 11 bankruptcy case of the Verity Health Systems of California, Inc., et. al. is pending (the "Motion").

This Motion is made pursuant to 28 U.S.C. § 157(d), and other applicable law on the grounds that:

(1) this action involves federal claims for relief under the WARN Act, 29 USC § 2101, et. seq., the resolution of which requires consideration of laws of the United States regulating organizations or activities affecting interstate commerce, for which withdrawal of the reference is mandatory and which must be tried in the District Court pursuant to 28 U.S.C. § 157(d); and

(2) to the extent not mandatory, permissive withdrawal of the reference is appropriate given the "non-core" nature of this proceeding, the presence of common law state claims, Plaintiff's asserted right to a jury trial, and to advance the interests of judicial economy and efficiency.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on this notice of Motion and Motion, the accompanying memorandum of points and authorities, the complaint and record in the adversary proceeding and the pending chapter 11 bankruptcy case of Verity Health Systems of California, et. al. ("Verity"), all matters that are subject of judicial notice, and any other or further argument and evidence that may be presented to the Court before or any hearing on this Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLEASE TAKE FURTHER NOTICE** that CNA will serve this Notice of Motion and Motion on the parties set forth in the Proof of Service attached hereto. A response to this Motion must be filed in accordance with Local Rule 7-9.

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Court sets a hearing on the Motion, CNA shall provide notice of entry of the order setting the hearing as directed by the Court.

**PLEASE TAKE FURTHER NOTICE** that this Motion is made following good faith efforts at conference of counsel pursuant to Local Rule 7-3 which occurred between February 28 and March 18, 2020.


Dated:  March 19, 2020                    Respectfully submitted,

                                          CALIFORNIA NURSES ASSOCIATION
                                          LEGAL DEPARTMENT


                                          By:  /s/ Carol A. Igoe
                                              Carol A. Igoe
                                              Counsel for Plaintiff
                                              California Nurses Association

## I.    INTRODUCTION

Plaintiff California Nurses Association ("CNA") filed an Adversary Proceeding Complaint in the Central District of California Bankruptcy Court against several Institutional Defendants that are Debtors in the related bankruptcy case, and two Individual Defendants who are not.  CNA sues based on the Institutional Defendants' failure to comply with California and Federal Worker Adjustment and Retraining Notification ("WARN") Acts when they permanently closed St. Vincent Medical Center in Los Angeles (the "Hospital" or "St. Vincent") without providing 60 days' advance notice to CNA and the St. Vincent nurses.  Relatedly, CNA also sues all Defendants for fraudulent concealment and negligent misrepresentation based on their representations about the probability that the Hospital would close.

CNA now respectfully moves this Court to withdraw the reference pursuant to 28 U.S.C. § 157(d) on the bases that both mandatory and permissive withdrawal are warranted.  While CNA moves to withdraw the reference for all of its claims, for the sake of clarity, it does not move to withdraw the reference for its requested relief that any recovery in this case be granted administrative claim priority.  This determination is within the purview of the bankruptcy court and a secondary issue of this case in any event.

Withdrawal of the reference is mandatory because this case presents three substantial and material questions of a non-bankruptcy federal law, namely the federal WARN Act.  First, adjudication requires resolution of the novel question of whether a notice is legally ineffective for all WARN Act purposes where it forecasts sale and continued operation of the business, as well as continued employment long after Defendants' knew such an outcome was unlikely.  Second, adjudication requires resolution of the novel question regarding whether Defendants' WARN Act Notice obligations were triggered as soon as Defendants' first realized that sale of the Hospital was becoming increasingly unlikely and that

they intended to shut down the Hospital in the event the sale fell through.  Third, this case requires close consideration of complex issues of joint and several liability between multiple entities, including entities that are not in a direct parent-subsidiary relationship.

In the alternative, permissive withdrawal is warranted.  CNA's Complaint presents non-core claims that are not created by bankruptcy law, could exist outside bankruptcy court, and would exist based on Defendants' misconduct even if no Defendant had filed for bankruptcy.  Furthermore, three out of four of the causes of action presented are state law claims.  All four claims carry a right to a jury trial.  And CNA does not consent to final adjudication by the Bankruptcy Court.  Accordingly, efficiency will be promoted by having this matter adjudicated by the District Court in the first instance to avoid probable duplication of judicial management and consideration.  Avoidance of duplicate attorney work before two courts also supports withdrawal.  Moreover, because CNA's Complaint does not involve any bankruptcy questions, withdrawal does not implicate the uniform administration of that area of the law.  Nor is forum shopping implicated, as this matter is yet in its infancy.  Accordingly, even if the District Court finds that withdrawal is not mandatory, permissive withdrawal is still warranted for good cause shown.

## II.    FACTS

On March 5, 2020, CNA filed the Complaint underlying this motion as an Adversary Proceeding in Bankruptcy Court against the entities Verity Health Systems, Inc. ("Verity"), Verity Holdings, DePaul Ventures, St. Vincent Medical Center, St. Vincent Dialysis Center, St. Francis Medical Center, Seton Medical Center; and against the individuals Richard Adcock and Steven Sharrer.  Complaint at ¶¶ 8-21, 2:20-ap-01051-ER, Doc. 1.  A copy of this Complaint is attached to this pleading as Exhibit 1.

CNA is a labor union that represents hundreds of registered nurses who

worked at St. Vincent until Defendants permanently shut it down in January 2020. Complaint at ¶ 7. CNA brings its Complaint on its own behalf, and in a representative capacity, on behalf of the St. Vincent registered nurses. *Id.*

As most relevant to this Motion, CNA's Complaint alleges that:

The Institutional Defendants in this matter are several hospitals, their parent company, and related entities — all of which share common ownership, financial control, management, directors, officers, operational control, and labor relations. Complaint at ¶¶ 8-21, 60-82. In August 2018, the Institutional Defendants in this matter filed for Chapter 11 relief. *Id.* at ¶ 23.

In about May 2019, Defendants entered an agreement to sell several hospitals, including St. Vincent, to Strategic Global Management ("SGM"). Complaint at ¶ 24. As part of that Agreement, public through the bankruptcy and emphasized by Defendants, SGM agreed to hire "substantially all" the St. Vincent employees. *Id.* at ¶ 25. Beginning in July 2019, CNA negotiated a new Collective Bargaining Agreement with Defendants and SGM on behalf of the St. Vincent nurses that would take effect once SGM took ownership of the Hospital. *Id.* at ¶¶ 24-27.

In August 2019, Defendants sent the St. Vincent nurses a "Notice Pursuant to Worker Adjustment and Retraining Notification Act and the California WARN Act." *Id.* at ¶ 28. It stated that while the sale of the Hospital to SGM was still subject to certain contingencies, Defendants were optimistic that the sale would close and SGM had agreed to employ substantially all the St. Vincent employees. *Id.* at ¶¶ 29-30. During this same period, Defendants acknowledged to the Bankruptcy Court, but did not share with employees, that if the sale did not close, Defendants would likely shut down the St. Vincent. *Id.* at ¶ 31.

In September 2019, CNA, Defendants and SGM reached a new Collective Bargaining Agreement that would govern the St. Vincent nurses' terms and conditions of employment once SGM became the owner. Complaint at ¶ 32.

In October 2019, Defendants sent the St. Vincent nurses a WARN Act extension notice that stated:

> Verity Health System of California, Inc. and certain affiliates entered into a Court approved agreement ("Agreement") to sell substantially all of the assets of [the hospitals, including St. Vincent,] to Strategic Global Management, Inc.  * * *  The Agreement requires satisfaction of certain milestones to complete the Sale.  Not all of the milestones have been met. Consequently, the separations of employment must be postponed and will not occur at the time originally anticipated. At this time, we anticipate the Sale and separations of employment will occur between November 17, 2019 and November 30, 2019."

Complaint at ¶ 33.

Nothing in the October Warn Notice indicated uncertainty about whether the sale would close, only when.  Because the October WARN Notice stated that the Defendants anticipated close of the sale and because Defendants had previously represented that SGM would continue to employ substantially all the nurses, this Notice effectively communicated to CNA and the St. Vincent nurses that substantially all the nurses' employment would continue.  Complaint at ¶ 34.

From about November 13-26, 2019, Defendants bargained with CNA over severance for the St. Vincent nurses who would not be hired by SGM.  Complaint at ¶ 35.  In this process, Defendants identified around nine nurses whose employment it expected would not be continued.  *Id.*  Defendants communicated to CNA that SGM would hire all the other St. Vincent nurses.  *Id.*  At no time during this bargaining did Defendants express doubt or concern over whether SGM would consummate the sale.  *Id.*  Based Defendants' representations, CNA and the nurses believed that the requirement that SGM hire "substantially all" the St. Vincent employees meant that all but nine of the St. Vincent nurses would have continued employment once the SGM sale closed and that those nine nurses would receive

severance pay.  *Id.*

Also in November 2019, and before Defendants concluded severance negotiations with CNA:  Defendants learned that SGM could not obtain sufficient financing to close the sale.  Complaint at ¶ 35.  SGM notified Defendants that it believed issues of "Material Adverse Effect" prevented SGM from closing.  *Id.* at ¶ 39.  And Defendants filed a "Plan B" motion under seal with the Bankruptcy Court to ensure that employees did not learn that Defendants planned to permanently shut down the Hospital if the sale to SGM fell through.  *Id.* at ¶ 40.  But Defendants did not disclose these facts to CNA or the St. Vincent nurses.

Instead, on about November 25, 2019, Mr. Steven Sharrer, Verity's Chief Human Resources Officer, sent a WARN Act extension notice to CNA stating that it anticipated the sale of St. Vincent to SGM would close between December 6, 2019 and December 19, 2019.  *Id.* at ¶ 41.  It also stated that the Defendants were continuing "to work expeditiously for a prompt close of the sale with SGM."  *Id.* And Defendants advised that in support of their efforts to promptly close the sale, they had obtained a court order regarding the Attorney General conditions and reached settlement with the U.S. Department of Health and Human Services, two crucial matters that had to be resolved for sale closing.  *Id.*

Because Defendants had already represented to CNA that SGM would continue to employ substantially all the nurses, Defendants' November WARN Notice amounted to false assurance that the nurses would likely keep their jobs because of the impending sale, when in fact Defendants already knew that the sale was unlikely to close.  Because of Defendants' repeated assurances, St. Vincent nurses did not seek other employment when they otherwise would have, and CNA wasted time and money on bargaining strategies that it otherwise would not have pursued.  Complaint at ¶ 44.

On December 5, 2019, SGM failed to close the sale of St. Vincent Medical Center by the deadline imposed by the bankruptcy court.  Complaint at ¶ 47.  By

December 16, 2019, Defendants were meeting with professional consultants to plan the permanent closure of St. Vincent Medical Center.  *Id.* at ¶ 48.

On December 18, 2019, Defendants emailed the St. Vincent nurses that the sale of the Hospital to SGM did not close and so their employment with Verity would "NOT end on December 19, 2019" as previously anticipated.  Complaint at ¶ 50.  Defendants did not disclose that they had begun the process of permanently closing St. Vincent because the sale had fallen through or that all the St. Vincent nurses would lose their jobs as a result.  *Id.*  Instead, the notice merely stated that Verity would advise them of "any further developments relating to [their] employment."  *Id.*  Nurses relied on Defendants' December 18 assurance that their employment with Verity would "NOT end," and because of it, did not seek other employment.  Complaint at ¶ at 51.

By December 19, 2019, at the latest, Defendants' counsel began researching whether they could shoe-horn the closure of St. Vincent, still undisclosed to the workforce, into an exception to the WARN Acts to avoid penalties for their failure to timely disclose the planned shutdown.  Complaint at ¶ 52.

On January 6, 2020, Defendants filed an emergency motion with the Bankruptcy Court to shut down St. Vincent Medical Center.  Complaint at ¶ 54.  The Motion expressed concern that once the fact that of an eminent shutdown was public, turnover of nursing staff would be "likely to accelerate, making maintenance of high-quality patient care more difficult, and, to the extent that temporary nursing replacements are required, significantly more expensive."  *Id.*  On January 8, 2020, the Bankruptcy Court granted Defendants' emergency motion to shutdown St. Vincent.  *Id.* at ¶ 55.  On January 9, 2020, Defendants permanently shut down St. Vincent's emergency department.  *Id.* at ¶ 56.

But it was not until January 13, 2020, that Defendants emailed CNA a new WARN notice (dated January 10, 2020) that finally disclosed that Defendants were shutting down St. Vincent Medical Center and all the nurses' employment would

end between January 14, 2019 and January 27, 2020.  Complaint at ¶ 57.
Defendants then shutdown the Hospital as announced in the January 2020 Notice,
and all the St. Vincent nurses lost their jobs with little to no notice or time to
secure alternative employment.

The lawsuit underlying this Motion followed.

## III.    ARGUMENT

### A.    Withdrawal of the Reference Is Mandatory.

All complaints related to a case under Title 11 are, as a general matter,
referred to the bankruptcy court.  C.D. Cal. General Order 266.  But withdrawal of
that reference is mandatory where resolution of the matter requires "consideration
of both title 11 and other laws of the United States regulating organization or
activities affecting commerce."  28 U.S.C. § 157(d).

Courts have consistently found that the statutory mandatory withdrawal
requirements are met when the legal issues involve the substantial and material
consideration of non-bankruptcy federal law.  *Security Farms v. Int'l Bhd. Of
Teamsters,* 124 F.3d 999, 1008 (9th Cir. 1997).  "The issues in question must
require more than the mere application well-settled or hornbook non-bankruptcy
law; significant interpretation of the non-[Bankruptcy] Code statute must be
required."  *United Nat'l Ins. Co. v. Vicars Ins. Agency (In re Vicars Ins. Agency)*,
96 F.3d 949, 953 (7th Cir. 1996) (quotation marks and citation omitted).  But the
legal questions involved need not be of "cosmic proportions."  *Id.* at 954.

Instead a federal issue is "substantial and material" if it requires something
more that the "routine application" of the non-bankruptcy federal laws.  *Shugrne v.
Air Line Pilot's Ass'n. Int'l. (In re Ionosphere Clubs Inc.)*, 922 F.2d 984, 995 (2d
Cir. 1990).  "Under this standard, withdrawal is required where there is a question
of first impression."  *County of L.A. Tax Collector v. Bank of Am.*, 2:10-cv-03536-
SVW, *9 (C.D. Cal. June 29, 2010) (collecting cases establishing this rule).
"Withdrawal is also required if there is meaningful analysis and consideration of a

non-bankruptcy federal commerce law, even in the absence of a question of first impression." *Id.* (collecting cases establishing this rule). The reason being, "Congress intended for difficult questions of non-bankruptcy federal law must be addressed by Article III courts rather than Bankruptcy Courts." *Id.* (citing *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982); Alan N. Resnick & Henry J. Sommer, eds., 1 Collier on Bankruptcy ¶ 3.04[2] (16th ed. 2010 supp.)).

CNA's Federal WARN Act claim alleges that CNA and the St. Vincent nurses were not provided with 60-days' advance notice of the Hospital closure as required by 29 U.S.C. § 2102. Because of the unusual of facts of this case this claim present several substantial and material questions of non-bankruptcy federal law, as detailed below. Moreover, federal labor laws of which the WARN Act is included are precisely the type of laws governing interstate commerce that Congress envisioned when it enacted Section 1157(d). *In re White Motor Corp.*, 42 B.R. 693, 700 (N.D. Ohio 1984) (approvingly citing to Representative Kramer's colloquy during consideration of the final version of Section 1157(d), in which he explained that the phrase "activities affecting interstate commerce" refers to related cases which require consideration of the 'National Labor Relations Act, civil rights laws, the Securities and Exchange Act of 1934 and similar laws'). Accordingly, withdrawal of the reference is in this case mandatory. *See, e.g.*, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, *9 (S.D.N.Y. 2011) ("[I]n determining whether withdrawal of the refence is mandatory, this Court need not evaluate the merits of the parties' claims; rather, it is sufficient for the court to determine that the proceeding will involve consideration of federal non-bankruptcy law.")

### 1. Legal Sufficiency of Institutional Defendants' WARN Act Notices

While bankruptcy courts occasionally adjudicate WARN Act cases, mandatory withdrawal is required in this case because CNA's Federal WARN Act claim is not the routine "cookie-cutter" case in which the employer provides no notice whatsoever to the union or employees at issue. In those cases, a bankruptcy court judge simply applies the statute to the facts at hand. *See In re Dana Corp.*, 379 B.R. 449, 458 (S.D.N.Y. 2002) (granting motion to withdraw reference because while the "bankruptcy court is certainly competent to address CERCLA issues, and although bankruptcy courts have done so in the past, I am not convinced that resolution of the disputed issues [would require straightforward application of established law]").

On the contrary, this case will require significant interpretation of the WARN Act to determine if Institutional Defendants' issuance of prior notices indicating that SGM would purchase St. Vincent and hire substantially all of the employees amounted to any form of WARN Act compliance. *In re St. Mary Hosp.*, 115 B.R. 495, 498 (E.D. Pa. 1990) ("When a bankruptcy court must engage in a complex search for the appropriate interpretation of a non-bankruptcy federal statute involving an issue of first impression section 157(d) withdrawal is required.") This case will also require a judge to decide if Institutional Defendants' January 2020 WARN Act Notice appropriately amended their prior notices to inform employees that they would in fact all lose their jobs when these prior notices led workers to expect continued employment, information Defendants' knew was misleading at the time.

Furthermore, since Institutional Defendants' January 2020 WARN Notice relied on the "unforeseeable business circumstances" exception this case will require interpretation of how this defense applies under these unique circumstances. Complaint at Ex.5. *In re Dana Corp.*, 379 B.R. at 461 (finding that determination of which circumstances qualify for the "act of God" defense

under CERCLA would require the bankruptcy court to "materially" consider the statute and so mandatory withdrawal was appropriate).  Additionally, a court will need to determine if the exception even applies given Defendants' inclusion of incomplete and inaccurate information in the prior notices, done to prevent employees from finding alternative work until their departure was convenient for Defendants.  Furthermore, a court will need to determine if the failure of SGM to close the sale amounted to an unforeseeable business circumstance based on SGM's recalcitrance from early on in the sale process.

Moreover, given that this defense only exists under the Federal WARN Act (*see* 29 U.S.C. § 2102(b)(2)(A)) and not the state WARN Act counterpart (Cal. Labor Code § 1400, *et. seq*.), a court will need to examine this federal and state law conflict determine if this exception applies to a California hospital operating in bankruptcy such as St. Vincent.  Accordingly, this case is only appropriate for an Article III judge to adjudicate since no clear authority on these questions of law exist which would provide an "easy conclusion."  *County of L.A. Tax Collector v. Bank of Am.*, 2:10-cv-03535-SVW, *18 (C.D. Cal 2010).

### 2.     Legal Issues Regarding Timing of Amendments to Prior WARN Notices

Assuming arguendo that not all of Defendants' WARN Act notices were misleading and could have been amended to state that the hospital would likely close, the question still exists of when such amendments were required in order to reduce Defendants' exposure.  Some courts outside of this Circuit have held that notice is required as soon as a plant closing is foreseeable.  *See, e.g., Local 1239 Int'l Bhd. Of Boilermakers v. Allsteel, Inc.*, 1996 Dist. Lexis 4829 (N.D. Ill. 1996) (finding that "interested parties [must] be notified of plant-closings when they become foreseeable, not when they are absolute certainties").  However, based on the timing and language of their January 13, 2020 WARN notice, Institutional Defendants will likely argue that such amendments were not required until the

bankruptcy judge granted their emergency motion to close St. Vincent on January 9, 2020.  Complaint at Ex. 5 (noting that the "additional notice [was provided] as soon as practicable" following the bankruptcy court's order).  Thus, because to Plaintiff's knowledge no controlling authority exists, the judge deciding this case must significantly engage with the WARN Act to decide an issue of first impression in this Circuit, further militating in favor of mandatory withdrawal.

### 3.    Joint and Several Liability Among Multiple Related Entities

Mandatory withdrawal is also triggered in this case by complex issues of joint and several liability.  Where employers' operations are sufficiently intertwined, various entities may be found to be a single employer, jointly and severally liable to their employees, even though the businesses attempted to avoid that organization.  This is commonly referred to as single employer or integrated enterprise.  And CNA alleges that the Institutional Defendants in this case should be held liable in this way.

Courts generally determine whether distinct businesses amount to a single employer by considering (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.  *Int'l Bhd. of Teamsters v. American Delivery Serv. Co.*, 50 F.3d 770, 776 (9th Cir. 1995).  In WARN Act cases, the courts also consider the Department of Labor regulations and state corporate law.  *Local 397 v. Midwest Fasteners, Inc.,* 779 F. Supp. 788 (D. N.J. 1992); *Wholesale & Retail Food Distribution Local 63 v. Santa Fe Terminal Servs.*, 826 F. Supp. 326, 334 (C.D. Cal. 1993).  CNA has alleged facts establishing that in this case, all the single employer and DOL factors weigh in favor of treating the Institutional Defendants as a single employer.  ¶ 8-21, 60-82.

And analyzing these issues results is a particularly complex and legal and fact-based inquiry.  *Cf. In re Dana Corp*, 379 B.R. 449, 457-58 (S.D.N.Y. 2007)

(finding that mandatory withdrawal of CERCLA claims appropriate because determining joint and several liability would require substantial material consideration, both factual and legal, of issues outside the realm of expertise of the bankruptcy court).  That is especially true where, as here, Plaintiff seeks to establish joint and several liability between entities that do not share a direct parent-subsidiary relationship.  *See Rogers v. Sugar Tree Prods.*, 7 F.3d 577, 582-583 (7th Cir. 1993) ("The single employer doctrine is not limited to parent-subsidiary relationships, but the issue becomes more difficult when considering whether two separate corporations owned by a single entity should be considered a single employer.").  Accordingly, mandatory withdrawal is also warranted in this case because of the complexity of the issue of joint and several liability.

### B.    Cause Exists for Permissive Withdrawal of the Reference.

Permissive withdrawal of the reference is also appropriate in this case for "cause shown."  *See* 28 U.S.C. § 157(d) (in relevant part, specifying that district courts may grant permissive withdrawal for cause shown).  In deciding whether to grant permissive withdrawal, courts consider whether the underlying claims are core or non-core as one factor in a multi-factor balancing test.  Courts also consider efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, prevention of forum shipping, and other related factors.  *E.g.*, *Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1009-10 (9th Cir. 1997) (discussing factors that inform whether to grant permissive withdrawal).  Here permissive withdrawal is strongly supported both by the reasons discussed above and by the general permissive withdrawal factors.

### 1.    Plaintiff's Complaint Arises Entirely Outside of the Bankruptcy Statute and so Consists of Non-Core Claims.

It is well settled that "[t]he applicable test for what constitutes a non-core matter is whether the right invoked is not one created by federal bankruptcy law and is one which could exist outside the bankruptcy court.  If the answer to

each of these questions is yes, then the claim is designated as non-core." *Oakview Terrace v. Owens Fin. Group (In re Oakview Terrace)*, 1994 U.S. Dist. LEXIS 825, *6 (N.D. Cal. Jan. 25, 1994) (citing *In re Eastport Assoc.*, 935 F.2d 1071, 1076-77 (9th Cir. 1991)). Stated in the reverse, "[a] cause of action is core and 'aris[es] under' the Bankruptcy Code if it is 'created or determined by a statutory provision of title 11,' while 'arising in' refers to proceedings that are 'not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.'" *In re Fraser's Boiler Serv.*, 2019 U.S. Dist. LEXIS 37840, *10 (W.D. Wash. Mar. 8, 2019).

Here, all of CNA's claims are completely independent of bankruptcy law. And all these claims could have been brought in the absence of any bankruptcy. Three of the four causes of action are based entirely on state law: California WARN Act, fraud, and negligence. These are quintessential non-core claims. *E.g. Henderson v. Bank of Am. N.A. (In re Simmons)*, 510 B.R. 76, 87 n.18 (Bankr. S.D. Miss. 2014) ("[I]f a claim is based on state law and the claim could arise outside of the context of a bankruptcy proceeding, then it is not a core proceeding.") (quoting *Sago v. Wal-Mart Stores, Inc.*, 280 F. Supp. 2d 578, 587 (S.D. Mass 2003)). CNA's Federal WARN Act claims are likewise the type of civil proceeding that could have been brought in state or district court in the absence of a related bankruptcy matter. For that reason, the Federal WARN Act cause of action is also a non-core proceeding. *E.g.*, *In re Colorado Energy Supply*, 728 F.2d 1283, 1286 (10th Cir. 1984) ("Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court."); *Johnson v. First NLC Fin. Servs., LLC (In re First NLC Fin. Servs., LLC)*, 410 B.R. 726, 731 (Bankr. S.D. Fla. 2008) (assessing motion to dismiss of non-debtor alleged to be single employer and finding that WARN Act claims against the non-debtor were related to bankruptcy but were "not a core proceeding" because the claims "did not involve a bankruptcy right" and are claims "typically

brought outside of bankruptcy court").

The only reason that CNA filed its Complaint in bankruptcy court is because it is "related to" the Institutional Defendants' bankruptcy case since any recovery from this lawsuit may impact the administration of the bankruptcy estate.  Thus, it is referred under C.D. Cal. General Order 266.  *Green v. FDIC* (*In re Tamalpais Bancorp*), 451 B.R. 6, 11 (N.D. Cal. 2011).  However, "the mere fact that the proceeding may ultimately affect the size of the estate does not mandate that the proceeding is a core proceeding."  *Air Line Pilots Ass'n Int'l v. Pension Ben. Guar. Corp. (In re United Air Lines, Inc.)*, 337 B.R. 904, 910 (N.D. Ill. 2006) (collecting examples of cases in which size of estate was impacted by non-core claims); *In re Tamalpais Bancorp*, 451 B.R. at 10 (A case having a "profound impact on the bankruptcy proceedings" is not enough to transform a claim "that could have been brought even if the Debtor had never filed for bankruptcy" into a core claim.). Instead, the bottom-line is that if, as here, "the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy, it is not a core proceeding" even if "it may be *related* to the bankruptcy because of its potential effect[.]"  *Wisdom v. Gugino (In re Wisdom)*, 2015 Bankr. LEXIS 1532, at *8 (Bankr. D. Idaho May 5, 2015) (quoting *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir. 1991).

Because none of the causes of action in CNA's complaint invoke or depend on rights created by bankruptcy law, and because all these claims could be brought even if none of the Defendants were involved in a bankruptcy, CNA's claims are all non-core.  This factor thus weighs in favor of permissive withdrawal.

///

///

///

///

### 2.    Permissive Withdrawal Would Support the Efficient Use of Judicial Resources.

The efficient use of judicial resources likewise supports withdrawal of the reference for CNA's Complaint.  First, CNA filed this Complaint as an adversary proceeding on March 5, 2020 — just two weeks before filing this motion to withdraw the reference.  And Defendants have yet to answer it.  Accordingly, the Bankruptcy Court has yet to expend any meaningful judicial resources on this matter.

Second, as an Article I court, a bankruptcy court cannot enter final judgment on common-law and state law claims.  *Stern v. Marshall*, 564 U.S. 462, 465(2011); *Blixseth v. Brown*, 470 B.R. 562, 570 (D. Mont. 2012).  Specifically, the *Stern* Court ruled that an Article I court cannot exercise "the most prototypical exercise of judicial power: the entry of a final binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime."  *Stern*, 564 U.S. at 494 (emphasis in original).  Thus, the bankruptcy court may not enter final judgments on dispositive motions for CNA's claims for fraudulent concealment and negligent representation which are the type of common-law state claims encompassed by the *Stern* Court ruling.  Accordingly, the District Court will ultimately have to consider these issues *de novo*, even if the Bankruptcy Court has already issued a recommendation.  *See, e.g., Verity Health System of California v. Chaudhuri*, 2:20-cv-00613-DSF, Dkt. No. 23 (C.D. Cal. March 5, 2020).  For this reason, it would be more efficient to have the District Court manage this matter in the first instance.  *Id.*

Third, Plaintiff has a right to a jury trial on all four causes of action, has demanded a jury trial, and does not consent to having the matter instead heard by the Bankruptcy Court.  *See Granfinanciera, S.A. v. Nordberg*, 109 S. Ct. 2782 (1989) (holding that state law claims which "include legal as opposed to strictly equitable elements" and which seek monetary relief "are entitled to a jury trial,

under the Seventh Amendment"); *Carlberg v. Guam Indus. Servs.*, 2017 U.S. Dist. LEXIS 164619, *7-9 (D. Guam 2017) (explaining that there is a right to jury trial for WARN Act claims); Cal. Code Civ. Pro § 592 (right to jury trial in negligence claims). Furthermore, under 28 U.S.C. § 157(e), a bankruptcy court may only conduct a jury trial with the consent of all parties. CNA does not consent to any jury trial before the Bankruptcy Court. This further militates in favor of permissive withdrawal. *E.g.*, *Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 B.R. 837, 838 (C.D.Cal. 1990) (explaining that defendant's right to jury trial before district court weighed in favor of withdrawal in the interest of efficient use of judicial resources).

Ultimately, because the bankruptcy court has yet to consider these issues and cannot issue a final decision, and because Plaintiff has a right to a jury trial before an Article III judge, consideration of judicial efficiency weighs in favor of withdrawal. This is especially true because, as outlined in the above section on mandatory withdrawal, this case presents a novel issue of interpretation based on the purpose of the WARN Act, and while the district courts routinely tackle legal issues of first impression in many areas of the law, bankruptcy courts do not. For this reason too, it would be more efficient for the District Court to handle this matter in the first instance.

### 3. Withdrawal of the Reference Would Not Increase Delay or Costs to the Parties.

Consideration of potential delay and costs to the Parties likewise supports withdrawal. As of the date of this Motion, Defendants' deadline to respond to the Complaint has not yet passed and none of the Parties have initiated discovery. On the contrary, as noted above, because the Bankruptcy Court lacks authority to finally adjudicate these claims, the Parties' resources will be preserved by withdrawal to ensure avoidance of any duplicate proceeding. For these reasons, consideration of cost to the Parties supports withdrawal in this case.

24

### 4.   Withdrawal of the Reference Does Not Implicate Uniform Administration of Bankruptcy Law.

As noted above, the only causes of action in Plaintiff's Complaint are Federal WARN Act claims, and California WARN Act, fraud, and negligence claims.  This case does not involve any question of bankruptcy law.  Accordingly, the uniform administration of bankruptcy law is not implicated.  *See*, *e.g.*, *McMahon v. Providence Capitol Enters., Inc. (In re McMahon)*, 222 B.R. 205 (S.D.N.Y. 1998) (granting a motion to withdraw the reference in a breach of contract case because uniformity of bankruptcy law would not be affected as the breach claim did not turn on questions of bankruptcy law).

### 5.   Permissive Withdrawal Does Not Implicate Forum Shopping.

This Adversary Proceeding is in its infancy.  The Bankruptcy Court has not yet taken any action on this matter.  It has not issued any related unfavorable rulings against CNA related to this case.  And as a result, CNA is not motivated to seek a friendlier venue, but instead asserts that the District Court is the proper venue for CNA's Complaint for all the reasons discussed above.  Accordingly, withdrawal in this case does not implicate forum shopping concerns.

In sum, analyzing the permissive withdrawal factors indicates that the District Court should exercise its discretion to withdraw the reference in this matter because: (1) CNA's Complaint involves non-core causes of action, (2) withdrawal will promote efficient use of judicial resources; (3) the parties will not incur increased cost or delay on account of withdrawal; (4) withdrawal does not implicate the uniform administration of substantive bankruptcy law; and (5) none of the concerns typically associated with forum shopping litigants  are present.

///
///
///
///

## IV.   CONCLUSION

In short, the Complaint underlying this Motion ought to be heard in the District Court.  Mandatory withdrawal of the reference is triggered because this case presents several substantial and material issues of non-bankruptcy federal law. And permissive withdrawal is warranted because these are non-core claims, including several complex state law issues, that all carry a right to a jury trial, which Plaintiff does not waive.  For all these reasons, CNA respectfully requests this Court withdraw the reference in this matter.

Dated:  March 19, 2020                  Respectfully submitted,

                                        CALIFORNIA NURSES ASSOCIATION
                                        LEGAL DEPARTMENT


                                        By:  /s/Carol A. Igoe
                                             Carol A. Igoe
                                             Counsel for Plaintiff
                                             California Nurses Association

# EXHIBIT 1

# EXHIBIT 1

1    CAROL IGOE (SBN 267673)
       KYRSTEN B. SKOGSTAD (SBN 281583)
2    NICOLE J. DARO (SBN 276948)
3    CALIFORNIA NURSES ASSOCIATION
       155 Grand Avenue
4    Oakland, CA 94612
       (510) 273-2200 (telephone)/(510) 663-4822 (facsimile)
5    kskogstad@calnurses.org
       ndaro@calnurses.org
6    cigoe@calnurses.org
7    Attorneys for Plaintiff
       CALIFORNIA NURSES ASSOCIATION

8

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In Re | Lead Case No.: 2:18-bk-20151-ER |
| VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et. al.*, | Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER |
|      Debtors and Debtors in Possession. | Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20166-ER<br>Case No. 2:18-bk-20167-ER |
| ☐ Affects All Debtors | Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER |
| ■ Affects Verity Health System of California, Inc. | Case No. 2:18-bk-20170-ER |
| ☐ Affects O'Connor Hospital | Case No. 2:18-bk-20171-ER |
| ☐ Affects Saint Louise Regional Hospital | Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER |
| ■ Affects St. Francis Medical Center | Case No. 2:18-bk-20175-ER |
| ■ Affects St. Vincent Medical Center | Case No. 2:18-bk-20176-ER |
| ■ Affects Seton Medical Center | Case No. 2:18-bk-20177-ER |
| ☐ Affects O'Connor Hospital Foundation | Case No. 2:18-bk-20178-ER |
| ☐ Affects Saint Louise Regional Hospital Foundation | Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER |
| ☐ Affects St. Francis Medical Center of Lynwood Foundation | Case No. 2:18-bk-20181-ER |
| ☐ Affects St. Vincent Foundation | Chapter 11 Cases |
| ■ Affects St. Vincent Dialysis Center, Inc. | |
| ☐ Affects Seton Medical Center Foundation | Hon. Ernest M. Robles |
| ☐  Affects Verity Business Services | |
| ☐ Affects Verity Medical Foundation | Adversary No. _____. |
| ■ Affects Verity Holdings, LLC | **COMPLAINT FOR DAMAGES, CIVIL** |
| ■ Affects De Paul Ventures, LLC | **PENALTIES, ATTORNEYS FEES** |
| ■ Affects De Paul Ventures – San Jose ASC, LLC | |
|      Debtors and Debtors in Possession. | **1. Workers Adjustment Training and Notification Act ("Warn Act") 29 U.S.C. §§ 2101, *et. seq.***<br><br>**2. California WARN Act, California** |

Exhibit 1
000028

Labor Code § 1400, *et. seq.*

3.  **Intentional Misrepresentation by Concealment**

4.  **Negligent Misrepresentation**

    **JURY TRIAL DEMANDED**

| | |
|---|---|
| 1 | ) |
| 2 | ) |
| 3 | ) |
| 4 | ) |
| 5 | ) |
| 6 | |

CALIFORNIA NURSES ASSOCIATION (CNA) )

                    Plaintiff, )

v. )

VERITY HEALTH SYSTEMS OF CALIFORNIA, INC., a California Corporation; ST. FRANCIS MEDICAL CENTER, an Affiliate; ST. VINCENT MEDICAL CENTER, an Affiliate; SETON MEDICAL CENTER, an Affiliate; ST. FRANCIS MEDICAL CENTER OF LYNWOOD, an Affiliate; ST. VINCENT DIALYSIS CENTER, INC., an Affiliate; VERITY HOLDINGS, LLC, an Affiliate; DEPAUL VENTURES, LLC, an Affiliate; RICHARD ADCOCK, an Individual; STEVEN SHARRER, an Individual, and DOES 1 through 500, )

                    Defendants. )

Exhibit 1    2
000029

Plaintiff California Nurses Association ("CNA"), alleges as follows:

**PRELIMINARY STATEMENT**

Well after they knew it was not true and that closure of St. Vincent Medical Center was imminent, Defendants continued to lead the St. Vincent Medical Center registered nurses and their labor representative, CNA, to believe that the hospital's operations, and therefore the nurses' continued employment, was secure.  By this deception, Defendants avoided the risk that when nurses learned the truth, they would seek other employment, thereby forcing Defendants to incur additional costs to maintain the nursing staff necessary to keep the hospital going until the Defendants were prepared to close it entirely.  By stringing the nurses along in this way, Defendants failed to give the required state and federal WARN Act disclosures and notices.  By these actions Defendants also committed fraud in the form of Intentional Misrepresentation by Concealment, as well as Negligent Misrepresentation directly harming both CNA and the nurses.

**JURISDICTION AND VENUE**

1.      This is an action arising under the Federal Worker Adjustment and Retraining Notification Act ("Federal WARN Act"), 29 U.S.C. §§ 2101, et seq., under the California WARN Act, California Labor Code §§ 1400, et seq., and California state tort law for damages resulting from the Defendants' failure to provide sixty days' notice, as required by both the Federal WARN Act and the California WARN Act, prior to laying off nearly 400 nurses who were employed at St. Vincent Medical Center in Los Angeles, California and related misrepresentations to them about the future operations of the hospital.

2.      The Bankruptcy Court has jurisdiction over this adversary proceeding (the "Action"), pursuant to 28 U.S.C. §§ 157 and 1334.

3.      The Action involves related proceedings pursuant to 28 U.S.C. § 157(b)(2).

4.      Venue is proper pursuant to 28 U.S.C. § 1409 because the Action is related to the above captioned bankruptcy cases (the "Bankruptcy Cases") pending in the United States Bankruptcy Court of the Central District of California, Los Angeles Division (the "Bankruptcy Court").

Exhibit 1
000030

5.      The Court has jurisdiction over the Defendants because they did business in this District and a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

6.      Having demanded a jury trial, Plaintiff does not consent to this Bankruptcy Court trying the case.  Plaintiff instead requests trial before the District Court.

## THE PARTIES

Plaintiff

7.      CNA is a "representative" as defined in 29 U.S.C. § 2101(a)(4), of a unit of affected nurses who were employed by Defendants until they were terminated without proper notice as part of mass layoffs and/or plant closings that began on about January 14, 2020. Defendants' actions directly harmed both CNA and the affected nurses.  CNA brings this Action on behalf of itself and, in its representative capacity, on behalf of the affected nurses.

Defendants

8.      Verity Health Systems, Inc. ("Verity") is a California nonprofit public benefit corporation located at 601 S. Figueroa, Suite 4050, Los Angeles, California, and the sole corporate member of St. Vincent Medical Center, St. Vincent Dialysis Center, St. Francis Medical Center, and Seton Medical Center ("Defendant Hospitals").

9.      St. Vincent Medical Center ("St. Vincent") is a California nonprofit public benefit corporation located at 2131 West Third Street in Los Angeles, California, doing business in the County of Los Angeles.  Until the middle of January of 2019, St. Vincent provided hospital and ancillary medical services on an inpatient and outpatient basis.

10.     St. Vincent Dialysis Center is a California nonprofit public benefit corporation and wholly owned subsidiary of St. Vincent Medical Center located at 201 S. Alvarado Street in Los Angeles, California doing business in the County of Los Angeles.  Until the middle of January of 2019, St. Vincent Dialysis Center provided dialysis medical services.  Unless otherwise indicated, the term "St. Vincent" will also encompass St. Vincent Dialysis Center.

11.     St. Francis Medical Center ("St. Francis") is a California nonprofit public benefit corporation located at 3630 East Imperial Highway in Lynwood, California, doing

Exhibit 1     4
000031

Case 2:20-cv-02023-SVW   Document 1   Filed 03/03/20   Page 32 of 95   Page ID #:32

business in the County of Los Angeles.  St. Francis provides hospital and ancillary medical services on an inpatient and outpatient basis.

12.     Seton Medical Center ("Seton") is a California nonprofit public benefit corporation with two hospitals located at 1900 Sullivan Avenue in Daly City, California and at 600 Marine Boulevard, Moss Beach, California.  Seton does business at each of these locations in the County of San Mateo, providing hospital and ancillary medical services on an inpatient and outpatient basis.

13.     Verity Holdings, LLC ("Holdings") is a California limited liability company, located at 1850 Sullivan Avenue in Daly City, California.  Holdings was created in 2016 to hold and finance Verity's interest in medical office buildings whose tenants are primarily physicians, medical groups, healthcare providers, and some of the Defendant Hospitals. Holdings is a direct subsidiary of its sole member Verity.

14.     DePaul Ventures, LLC ("DePaul Ventures") is a wholly-owned and operated holding company of Verity Health Systems, Inc.  DePaul Ventures was formed in 2010 for the purpose of investing in a freestanding surgery center and other healthcare entities.

15.     This Complaint refers to Verity, St. Vincent, St. Vincent Dialysis Center, St. Francis, Seton, Holdings, and DePaul Ventures as the "Institutional Defendants."

16.     At all times relevant herein, the Institutional Defendants have been and are an employer as defined in the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101(a)(1)(A) and California Labor Code § 1400, et seq. ("Cal-WARN Act").

17.     At all times relevant herein, the Institutional Defendants have been and are joint employers.

18.     At all times relevant herein, the Institutional Defendants have been and are a single employer/integrated enterprise.

19.     Richard Adcock is an individual.  At all times relevant herein, he was the Chief Executive Officer of Verity and exercised control and influence over key decisions at issue in this Complaint.

20.     Steven Sharrer is an individual.  At all times relevant herein, he was the Chief

Exhibit 1    5
000032

Human Resources Officer of Verity and exercised control and influence over key decisions at issue in this Action.

21.    This Complaint refers to Richard Adcock and Steven Sharrer as the "Individual Defendants."

22.    Plaintiffs are ignorant of the true names or capacities of the defendants sued under fictitious names Does 1 through 500, inclusive.  Plaintiffs are informed and believe that each of the defendants designated as a Doe is responsible in some manner for the events and happenings alleged herein.

## **FACTUAL BACKGROUND**

23.    On about August 31, 2018, the Institutional Defendants filed a bankruptcy petition for Chapter 11 relief in this Court.

24.    On about May 2, 2019, this Court issued an order, inter alia, approving the Asset Purchase Agreement ("APA") entered into between Strategic Global Management ("SGM") and Verity, St. Vincent, St. Francis, Seton, and Holdings [Docket No. 2306[1]].  Under the APA, SGM would acquire St. Vincent, St. Francis, and Seton [*Id.*].

25.    Under Section 5.3 of the APA, as a condition of closing, SGM was required to offer employment "to substantially all persons (whether such person are full time employees, part-time employees, on short-terms or long-term disability or on leave of absence, military leave or workers compensation leave) who . . . are: (i) employees of any Seller; (ii) employees of any affiliate of any Seller. . . (iii) employed by an affiliate of any Seller . . ." [Docket No. 1279].

26.    The terms and conditions of the St. Vincent nurses' employment were governed by a collective bargaining agreement ("CBA") between St. Vincent and CNA.  The CBA is effective December 22, 2016 to December 21, 2020.

27.    Beginning on about July 25, 2019, CNA, Verity, and SGM negotiated a new

---

[1] All docket references refer to *In re Verity Health Systems*, Case No. 2:18-bk-20151 (Bankr. C.D. Cal. 2018) unless otherwise noted.

Exhibit 1    6
000033

CBA that would govern the terms and conditions of employment of the St. Vincent nurses after SGM took over ownership of the hospital.

28.     On August 12, 2019, Verity provided a "Notice Pursuant to Worker Adjustment and Retraining Notification Act and the California WARN Act" signed by Mr. Steven Sharrer to CNA Representative Andrew Prediletto and the St. Vincent nurses [See attached Exhibit 1]. This initial notice advised that the Bankruptcy Court had entered an order approving the sale of St. Vincent to SGM and that they expected the sale to close between October 18 and October 31, 2019.

29.     The August 12 notice also stated: "The closing of the Sale is subject to certain regulatory and other approvals and the satisfaction of certain other conditions agreed to between the Debtors and the Purchaser. While the Debtors are optimistic that the Sale will close, there is a possibility that the Sale will be unsuccessful."

30.     The August 12 notice further stated that SGM agreed "to make offers of employment to substantially all of St. Vincent's employees" but that "[f]or those employees, *if any*, who are not hired by the Purchaser, the employment loss is expected to be permanent" [emphasis added].  The notice contained a list of 401 positions and names of nurses in the bargaining unit then currently holding jobs to be affected by the sale [*Id.*].  CNA and the nurses reasonably understood this notice to mean that substantially all 401 nurses should expect their employment to continue upon closure of the sale to SGM.

31.     On August 23, 2019, as part of its opposition to any additional conditions imposed by the California Attorney General on the sale of Defendant Hospitals to SGM, Verity represented to this Court that failure to consummate the SGM sale would likely result in the closure of St. Vincent and Seton hospitals [Docket No. 2946].

32.     On September 19, 2019, CNA, SGM, and Verity reached agreement on a new CBA that would apply once SGM acquired St. Vincent and Seton [Docket No. 3604].

33.     On October 23, 2019, Verity issued a WARN extension notice (the "October WARN Notice").  That notice stated: "Verity Health System of California, Inc. and certain affiliates entered into a Court approved agreement ("Agreement") to sell substantially all of the

Exhibit 1    7
000034

Case 2:20-cv-02025-SVW    Document 1    Filed 03/05/19    Page 35 of 95    Page ID #:35

assets of [the hospitals, including St. Vincent,] to Strategic Global Management, Inc."  The notice further stated: "The Agreement requires satisfaction of certain milestones to complete the Sale.  Not all of the milestones have been met.  Consequently, the separations of employment must be postponed and will not occur at the time originally anticipated.  At this time, we anticipate the Sale and separations of employment will occur between November 17, 2019 and November 30, 2019."  And that notice assured CNA that "[w]e will continue to keep you apprised of any new developments and will provide you with updated information should circumstances change with respect to the Sale and the separations of employment."  [See attached Exhibit 2].

34.     Nothing in the October Warn Notice indicated any uncertainty about whether the sale would close, only when.  Because the October WARN Notice plainly stated that the Defendants anticipated close of the sale and because Defendants had previously represented that SGM would continue to employ substantially all the nurses, this notice effectively communicated to CNA and the St. Vincent nurses that substantially all the nurses' employment would continue.

35.     On November 13, 2019, Verity filed a motion to approve the modifications to the CBA and resolve other issues between the parties [Docket No. 3604].

36.     Between about November 13 and November 26, 2019, Verity engaged in approximately four to five effects bargaining sessions with CNA over severance for the nurses who would not be hired by SGM at the close of the sale.  In this process, Verity identified around nine nurses whose employment it expected would not be continued after closing the sale.  Verity communicated to CNA that all other employees would be hired by SGM.  At no time during these bargaining sessions did Verity express doubt or concern that SGM would consummate the sale.  Based on these bargaining sessions, CNA and the nurses believed that "substantially all" meant at all but nine of the nurses would continue employment once the SGM sale closed, and the approximately nine nurses whose employment did not continue would receive severance pay.

37.     Based on information and belief, on about November 18, SGM's CEO, Peter

Exhibit 1    8
000035

Baronoff, telephoned Verity's Investment Banker, Carsten Beith, to inform Verity that SGM could not obtain sufficient financing to close the sale [*Verity Health Systems, Inc. v. Strategic Global Management*, 2:20-ap-01001-ER (Bankr. C.D. Cal. January 22, 2020), Docket No. 1]. Immediately after receiving this information, Verity requested a continuance of the hearing for its motion to approve its disclosure statement [*Id.*]. This Court granted Verity's request for continuance and ordered that Verity submit a "Plan B" to the Court regarding Verity's plan for resolving the bankruptcy case should SGM fail to close the sale.

38.     On November 20, 2019, Verity sent a letter to SGM representing that all of the conditions in the APA had been met on November 19, and, consequently, SGM was obligated to close by December 5, 2019 [*Id.*].

39.     On November 22, 2019, SGM responded to Verity complaining of various issues which amounted to a "Material Adverse Effect" under the APA and that prevented SGM from closing [*Id.*].

40.     On November 22, 2019, Verity filed a motion with this Court for permission to file its "Plan B" should SGM not consummate the sale. The motion was filed under seal and represented that "SGM has yet to provide the Debtors with specific information regarding their intentions for the SGM sale" [Docket No. 3678]. In this same motion, Verity also noted that it did not want to file Plan B publicly because it "may have an adverse impact on operations and employee morale" [*Id.*]. This admission reveals that Verity did not want its employees to learn that Verity planned to permanently shut down St. Vincent if, as by then Verity believed to be likely, the SGM sale fell through.

41.     On about November 25, 2019, Mr. Steven Sharrer, Verity's Chief Human Resources Officer, sent a WARN extension notice ("November WARN Notice") to CNA representative Andrew Prediletto informing him that it anticipated the sale of St. Francis, St. Vincent, and Seton to SGM would close between December 6, 2019 and December 19, 2019 [See Attached Exhibit 3].

42.     Defendants' November WARN Notice also stated that the Defendants were continuing "to work expeditiously for a prompt close of the sale with SGM" [*Id.*]. Verity also

Exhibit 1      9
000036

advised that in support of its efforts to promptly close the sale, Defendants had obtained a court order regarding the Attorney General conditions and reached settlement with the U.S. Department of Health and Human Services, two crucial matters that had to be resolved for sale closing [*Id*.].

43.     Defendants' November WARN Notice failed to disclose the fact that SGM had already informed Verity it did not have the financing to close and, in any event, believed it was not required to close [*Id*.].  Furthermore, while the notice proudly announced its settlement agreement with the U.S. Department of Health and Human Services, it neglected to mention that Verity did not yet have a settlement agreement with the California Department of Healthcare Services (DCHS).  Based on information and belief, if Verity failed to execute a settlement agreement with DCHS, DCHS would have a potential recoupment claim against SGM (as the purchaser) for $80 million.  This outstanding liability and lack of funds would and ultimately did impact SGM's ability and willingness to close the sale.  Because Defendants had already represented to CNA that SGM would continue the employment of substantially all CNA members, Defendants' November WARN Notice amounted to false assurance that CNA members would likely keep their jobs because of the impending sale, when in fact Defendants already knew that the sale was unlikely to close.

44.     By the actions described in Paragraphs 27-30, 32-36, and 40-43, Defendants led CNA to believe that closure of the SGM sale was imminent and that substantially all of CNA's members at St. Vincent would retain their jobs after SGM purchased the hospital [Docket No. 36042].  By these same actions, Defendants led the nurses working at St. Vincent to believe that closure of the SGM sale was imminent and that as a result, substantially all the nurses at St. Vincent would retain their jobs.  Upon information and belief, St. Vincent registered nurses relied on Defendants' repeated assurances that it expected to promptly close the sale to SGM, and as a result, did not seek other employment when they otherwise would have.

45.     On November 26, 2019, this Court ordered that SGM close the sale by

Exhibit 1    10
000037

December 5, 2019 [Docket No. 3724].

46.     On December 4, 2019, this Court held a hearing on Verity' motion to approve the modifications to the CBA and granted said motion in its entirety [Docket No. 3755].

47.     On December 5, 2019, SGM failed to close the sale by the deadline in the APA, and there was no reason to expect that it would do so in the future. The Defendants did not amend the November WARN Notice at that time or take any other action to inform CNA or the St. Vincent nurses that it was increasingly likely that the SGM sale would not close or that if the sale to SGM did not close, it was likely that Defendants would permanently shut down the St. Vincent Medical Center in very short order.

48.     By December 16, 2019, at the latest, Defendants had already begun meeting with professional consultants to develop plans to permanently shut down St. Vincent.

49.     On December 17, 2019, Verity called SGM and advised SGM that Verity was terminating the APA, effective December 27, 2019, as a result of SGM's failure to close the sale on December 5 [*Verity Health Systems, Inc. v. Strategic Global Management*, 2:20-ap-01001-ER (Bankr. C.D. Cal. January 22, 2020), Docket No. 20]. The Defendants did not amend the November WARN Notice at that time or take any other action to inform CNA or the St. Vincent nurses that the SGM sale would not close or that because the SGM would not close, it was likely that Defendants would permanently shut down the St. Vincent Medical Center.

50.     On December 18, 2019, Rich Adcock emailed the nurses, informing them that SGM did not close the sale as required by the bankruptcy court, and so their employment with Verity would "NOT end on December 19, 2019" as Verity had previously anticipated. This email communication did not disclose that Defendants anticipated permanently closing St. Vincent because the sale to SGM had fallen though. It did not disclose that it was likely that the St. Vincent nurses would all lose their jobs as a result. The notice merely stated that Verity would advise them of "any further developments relating to [their] employment" [See attached Exhibit 4].

51.     Upon information and belief, St. Vincent registered nurses relied on Defendants' December 18 assurance that their employment with Verity would "NOT end," and as a result,

Exhibit 1    11
000038

did not seek other employment.

52.     By December 19, 2019, at the latest, Defendants' counsel began researching whether they could shoe-horn the planned permanent closure of St. Vincent into an exception to the WARN Acts, which would enable them to avoid civil penalties for having failed to timely disclose the planned shutdown.

53.     Effective December 27, 2019, Verity terminated the APA between it and SGM [Docket No. 3899].  Defendants did not amend the November WARN Notice at that time or take any other action to inform CNA or the St. Vincent nurses that because the SGM would not close, it was likely that Defendants would permanently shut down the St. Vincent Medical Center.

54.     On January 6, 2020, Verity filed an emergency motion with this Court to shut down St. Vincent [Docket No. 3906].  In this Motion Verity expressed concern that once the fact that it was seeking authorization to shut down St. Vincent was public, the turnover of nursing staff would be "likely to accelerate, making maintenance of high quality patient care more difficult, and, to the extent that temporary nursing replacements are required, significantly more expensive" [Docket No. 3906].  Defendants did not amend the November WARN Notice at that time.

55.     On January 8, 2020, this Court granted Defendants' emergency motion to shut down St. Vincent.  Defendants did not amend the November WARN Notice at that time.

56.     On January 9, 2020 at 7:00 a.m., Defendants permanently shut down St. Vincent's emergency department [Docket No. 3982].  Defendants did not amend the November WARN Notice at that time.

57.     On January 13, 2020, Verity's Chief Human Resources Officer, Mr. Steven Sharrer, emailed Mr. Prediletto a new WARN notice dated January 10, 2020 ("January WARN Notice").  This notice did not refer to itself as an extension to the November WARN Notice [See attached Exhibit 5].  The January WARN Notice stated that closure and separations of employment at St. Vincent Medical Center would occur between January 14, 2019 and January 27, 2020 [*Id.*].  The January WARN Notice asserted that Defendants had previously expected

Exhibit 1     12
000039

the SGM sale to close, but that it did not, and stated that the permanent closure of St. Vincent was a result of the failure of SGM to close.  The January notice included an Exhibit A, which listed the names of approximately 365 nurses who would be terminated as a result of the closure [*Id.*].

58.    As of January 18, 2020, St. Vincent had no patients [Docket No. 3982].

59.    As of January 27, 2020, only approximately 20 employees remained at Saint Vincent to complete winddown operations [*Id.*].

### INTERGRATED ENTERPRISE & JOINT EMPLOYER

### Common Ownership & Financial Control

60.    Upon information and belief, all Institutional Defendants are owned and/or controlled by Defendant Verity.  As previously stated, Verity is the sole corporate member of St. Vincent, Seton, and St. Francis.

61.    Upon information and belief, Richard Adcock serves as the CEO and Peter Chadwick serve as the Secretary and CFO of St. Vincent, Seton and St. Francis.  The only difference in Verity's officers is that Terry Belmont serves as its Secretary instead of Mr. Chadwick.

62.    The manager of Holdings is Verity and the manager of DePaul Ventures is Richard Adcock.

### Common Management, Directors, and Officers

63.    Upon information and belief, the bylaws of Verity and each of the Defendant Hospitals vest ultimate authority over major decisions to the Verity board of directors such as whether to change the mission of a hospital, amend a hospital's bylaws, appoint and remove its directors, approve the incurrence of debt and, inter alia, approve the operating budget.

64.    Upon information and belief, business plans are developed by Verity, rather than individual Defendant Hospitals.

65.    Upon information and belief, per each Defendant Hospitals' bylaws, at least one member of Defendant Hospitals' board of directors must be a member of Verity's Board of Directors.

Exhibit 1    13
000040

66.     Upon information and belief, outside consultants are retained at the system-level for all Defendant Hospitals and Verity.

67.     Elspeth D. Paul serves as the General Counsel for all the Institutional Defendants.

## De Facto Control

68.     Upon information and belief, Verity makes all major decisions for St. Vincent, St. Francis, Seton, Holdings, and DePaul Ventures including the decision to place these entities into bankruptcy.

69.     Upon information and belief, Verity made the determination to shut down St. Vincent.

70.     Upon information and belief, Verity sent the WARN notices to Defendant Hospitals' employees.

71.     Upon information and belief, Verity and the Individual Defendants determined when and how to provide or not provide notification to employees regarding the imminent closure of St. Vincent.

## Interrelation Between & Dependency of Operations

72.     Upon information and belief, Verity and Defendant Hospitals hold themselves out to the public as an integrated and unified health system.  Per its own representations to this Court, Verity operates Defendant Hospitals [Docket No. 8, p. 7].

73.     Upon information and belief, Verity and Defendant Hospitals share insurance policies for workers' compensation coverage, general liability, storage tank liability, commercial property, commercial automobile, and helipad liability.

74.     Upon information and belief, Verity and Defendant Hospitals are part of an obligated group whereby the prepetition loans they received imposed joint and several liability upon them and allowed all obligated group members use of such loan proceeds.

75.     Upon information and belief, Verity negotiated numerous system-wide agreements for all the Defendant Hospitals.

76.     Upon information and belief, capital improvements were financed for Defendant

Exhibit 1    14
000041

1   Hospitals based on financings undertaken on a joint and several basis.

2   77.    Upon information and belief, Verity routinely transferred funds between all

3   Institutional Defendants.

4   78.    Upon information and belief, all Institutional Defendants list the same business

5   address on their filings with the California Secretary of State: 601 S. Figueroa Suite 4050, Los

6   Angeles, CA 90017 which is the physical location of Verity.

7   79.    Upon information and belief, all employees of Verity and Defendant Hospitals

8   have an email address that is not specific to each entity and instead is in the form of

9   employeesname@verity.com.

10   **Centralized Control of Labor Relations**

11   80.    Upon information and belief, Verity's Chief Human Resources Officer, Mr.

12   Steven Sharrer, oversees the labor relations at all Defendant Hospitals.

13   81.    Upon information and belief, negotiations for CBAs at Defendant Hospitals are

14   performed by Verity management on a system-wide basis.

15   82.    Upon information and belief, prior to the sale of O'Connor Regional Hospital

16   ("O'Connor) and Saint Louise Regional Hospitals ("Saint Louise") to Santa Clara County and

17   the closure of St. Vincent, Verity recognized a single unit of CNA-represented registered

18   nurses comprised of those who worked at St. Vincent, O'Connor, St. Louise, and Seton.  These

19   nurses' terms and conditions were covered by a single master CBA and supplemental local

20   agreements for each hospital.

21   83.    Upon information and belief, all of the Institutional Defendants' employees

22   participate in common retirement plans, healthcare plans and other employee benefit plans.

23   84.    Upon information and belief, Verity and Defendant Hospitals maintain common

24   personnel policies, a shared employee recruitment website, and human resources portal.

25   **COUNT I: VIOLATION OF THE FEDERAL WARN ACT**

26   85.    Plaintiff restates and realleges paragraphs 1-84 as if fully set forth herein.

27   86.    The Federal WARN Act, 29 U.S.C. § 2101, et. seq., regulates the amount of

28

Exhibit 1      15
000042

notice an employer must provide to employees who will be terminated due to the employer's closing of a plant or mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

87.    The Federal WARN Act prohibits an employer from ordering a mass layoff for at least 60 days after it serves written notice of the pending layoff to affected employees, each representative of the affected employees, the entity designated by the State to carry out rapid response activities, and the chief elected official of the unit of local government within which the layoff is to occur.

88.    The Institutional Defendants were, and are, subject to the notice and back pay requirements of the Federal WARN Act because they are individually and collectively a business enterprise that employs 100 or more employees, excluding part-time employees, as defined in the Act.  29 U.S.C. § 2101(1)(A).

89.    At all times material herein, the St. Vincent registered nurses have been entitled to the rights, protections, and benefits provided under the Federal WARN Act, 29 U.S.C. § 2101, et. seq.

90.    The Institutional Defendants violated the Federal WARN Act by ordering a mass layoff and closing without providing 60 days' written notice to CNA, affected employees, or any State of California or City of Los Angeles agency or official of the permanent closure of St. Vincent.

91.    The St. Vincent nurse-employees of the Institutional Defendants who were terminated and/or laid off without 60 days' notice are aggrieved and entitled to the remedies provided by law.

92.    As a result of the Institutional Defendants' actions, each aggrieved employee has suffered damages in an amount to be proven at trial.

### COUNT II: VIOLATION OF THE CALIFORNIA WARN ACT

93.    Plaintiff restates and realleges paragraphs 1-84 as if fully set forth herein.

94.    At all times material herein, the St. Vincent registered nurses have been entitled to the rights, protections, and benefits provided under the California WARN Act, California

Exhibit 1    16
000043

Labor Code § 1401, et seq.

95.     The California WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's closing of a plant or mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

96.     The Institutional Defendants were, and are, subject to the notice and back pay requirements of the California WARN Act because they are individually and collectively a business enterprise that employs 75 or more employees, excluding part-time employees, as defined in the Act.  Cal. Labor Code § 1400, et. seq.

97.     The Institutional Defendants violated the California WARN Act by failing to provide the required notice to the affected employees and/or any of the various government agencies to which they were required by law to give notice, in writing, at least 60 days prior to the terminations and/or layoffs of the permanent closure of St. Vincent.

98.     The St. Vincent nurse-employees of the Institutional Defendants who were terminated and/or laid off without 60 days' notice are aggrieved and entitled to the remedies provided by law.

99.     As a result of the Institutional Defendants' actions, each aggrieved employee has suffered damages in an amount to be proven at trial.

**COUNT III: INTENTIONAL MISREPRESENTATION BY CONCEALMENT**

100.     Plaintiff restates and realleges paragraphs 1-84 as if fully set forth herein.

101.     Beginning in August 2019, Defendants disclosed some facts to CNA and the St. Vincent nurses about the bankruptcy and planned sale of Defendant Hospitals to SGM. However, for extended periods of time beginning in November 2019, Defendants intentionally failed to timely disclose that:

    a.   New information had arisen and then continued to arise that made it increasingly unlikely the sale would close;

    b.   Defendants anticipated permanently shutting down St. Vincent entirely and expeditiously in the increasingly likely event that the sale did not close;

Exhibit 1    17
000044

c.  The sale fell through;

d.  Defendants were planning to permanently shut down St. Vincent entirely
and expeditiously because the sale fell through.

102.    Prior to Defendants' late disclosure on December 18, 2019 that SGM did not close the sale on the date ordered by this Court, CNA and the St. Vincent nurses believed that the St. Vincent nurses' employment was likely to continue because the SGM sale was going to close and SGM was going to continue operating the hospital.  Defendants had not disclosed to the nurses or CNA, and the nurses and CNA did not know that:

a.  New information had been arising for weeks that made it increasingly
unlikely the sale would close;

b.  Defendants anticipated permanently shutting down St. Vincent entirely and
expeditiously in the increasingly likely event that the sale did not close;

c.  The sale fell through;

d.  Defendants were planning to permanently shut down St. Vincent entirely
and expeditiously because the sale fell through.

103.    In the December 18, 2019 email in which Defendants notified the St. Vincent nurses that the sale to SGM had not occurred as ordered, Defendants also stated that the nurses' employment would "NOT end."  As a result, prior to Defendants' public disclosure in January 2020, CNA and the CNA-represented nurses believed that the nurses' employment at St. Vincent was likely to continue even though the sale to SGM appeared to have fallen through. They did not know that Defendants were planning to permanently shut down St. Vincent entirely, and they certainly did not expect hospital departments to shut down in less than a month.

104.    Defendants' deliberately concealed these material facts to lead nurses and CNA to the false conclusion that the nurses' employment was very likely to continue despite the bankruptcy.  Defendants misled the nurses and CNA in this way to avoid incurring additional expenses to secure the necessary nursing staff to keep St. Vincent running until they were ready to close it and to avoid the possibility of effective organized opposition to the planned closure.

Exhibit 1    18
000045

105.    St. Vincent nurses who would have looked for other work if they had known that the hospital was likely to shut down did not do so because they were intentionally kept ignorant of these facts.  As a result, those nurses only began to look for work when the news of shut down reached the general public after Verity finally disclosed its shutdown plans in a filing with this Court on January 6, 2020.  This was less than two weeks before the nurses lost their jobs.

106.    Because of Defendants' deliberate concealment of these material facts, nurses experienced periods of unemployment, financial hardship, and emotional hardship that they would not otherwise have experienced.

107.    CNA would have engaged in different bargaining and organizing strategies if it had known that the hospital was likely to permanently shut down but did not do so because Defendants intentionally kept CNA ignorant of these facts.

108.    Because of Defendants' deliberate concealment of these material facts, CNA incurred expenses and wasted time engaging in bargaining based on false pretenses.

### COUNT IV: NEGLIGENT MISREPRESENTATION

109.    Plaintiff restates and realleges paragraphs 1-84 as if fully set forth herein.

110.    Beginning in August 2019, Defendants disclosed some facts to CNA and the CNA-represented nurses at St. Vincent about the bankruptcy and planned sale of Defendant Hospitals to SGM.  However, for extended periods of time beginning in November 2019, Defendants failed to timely disclose the facts that:

      a.    New information had arisen and then continued to arise that made it increasingly unlikely the sale would close;

      b.    Defendants anticipated permanently shutting down St. Vincent entirely and expeditiously in the increasingly likely event that the sale did not close;

      c.    The sale fell through;

      d.    Defendants were planning to shut down St. Vincent entirely and expeditiously because the sale fell through.

111.    Prior to Defendants' late disclosure on December 18, 2019 that the SGM sale

Exhibit 1    19
000046

did not close on the date ordered by this Court, CNA and the St. Vincent nurses believed that the nurses' employment was likely to continue because the SGM sale was going to close and SGM was going to continue operating the hospital. Defendants had not disclosed to the nurses or CNA, and the nurses and CNA did not know that:

       a.  New information had been arising for weeks that made it increasingly unlikely the sale would close;

       b.  Defendants anticipated shutting down St. Vincent entirely and expeditiously in the increasingly likely event that the sale did not close;

       c.  The sale fell through;

       d.  Defendants were planning to shut down St. Vincent entirely and expeditiously because the sale fell through.

112. In the December 18, 2019 email in which Defendants notified the CNA-represented nurses that the sale to SGM had not occurred as ordered, Defendants also stated that the nurses' employment would "NOT end." As a result, prior to Defendants' public disclosure in January 2020, CNA and the CNA-represented nurses believed that the nurses' employment at St. Vincent was likely to continue even though the sale to SGM had not occurred as ordered. They did not know that Defendants were planning to permanently shut down St. Vincent entirely and expeditiously because the sale fell through.

113. Defendants previous representations about the likely future of St. Vincent became misrepresentations when Defendants failed to advise CNA and the CNA-represented nurses of these changes in circumstances. And Defendants had no reasonable grounds for believing their prior representations remained true after they learned that sale to SGM was increasingly unlikely and decided that they would permanently shut down St. Vincent if the sale fell through.

114. St. Vincent nurses who would have looked for other work if they had known that the hospital was likely to shut down did not do so because they reasonably relied on Defendants' representations that the hospital would keep operating. As a result, those nurses only began to look for work when the news of shut down reached the general public after

Exhibit 1      20
000047

Verity finally disclosed its plans in its filing with this Court on January 6, 2020.  This was less than two weeks before the nurses lost their jobs.

115.    Because of Defendants' misrepresentation of material facts, nurses experienced periods of unemployment, financial hardship, and emotional hardship that they would not otherwise have experienced.

116.    CNA would have engaged in different bargaining and organizing strategies if it had known that the hospital was likely to shut down but did not do so because it reasonably relied on Defendants' misrepresentations.

117.    Because of Defendants' misrepresentations of material facts, CNA incurred expenses and wasted time engaging in bargaining based on false pretenses.

## **PRAYER**

Plaintiff prays for judgment against Defendants, and each of them as follows:

118.    A judgment in favor of the Plaintiff and each of the "affected employees" under the State and Federal WARN Acts equal to the sum of sixty-days of: their unpaid wages, accrued holiday pay, accrued vacation pay, health and life insurance, and other ERISA benefits that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the California and Federal WARN Acts;

119.    Civil penalties for each day of the WARN Act violations;

120.    Compensatory damages, including lost wages and lost employee benefits, damages to CNA related to bargaining expenses and missed organizing opportunities;

121.    Damages for mental pain and anguish and emotional distress;

122.    Punitive damages;

123.    Liquidated damages, as allowed by law;

124.    Interest as allowed by law on the amounts owed under the preceding paragraphs;

125.    Treatment of all damage claims as first priority administrative expense pursuant to 11 U.S.C. § 503(b)(l)(A)(i)-(ii).  For such other and further relief as Bankruptcy Court deems just and proper.

Exhibit 1
000048

126.    Plaintiff's reasonable attorneys' fees and the costs and disbursements that the
Plaintiff incurred in prosecuting this action, as authorized by the WARN Acts;

127.    An allowed administrative-expense priority claim under 11 U.S.C. § 503 for the
reasonable attorneys' fees and the costs and disbursements that the Plaintiff incurs in
prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and

128.    Such other and further relief as this Court may deem just and proper.

Dated: March 5, 2020                    Respectfully submitted,

                                        CALIFORNIA NURSES ASSOCIATION
                                        LEGAL DEPARTMENT

                                        By _____
                                           Kyrsten B. Skogstad
                                           Attorneys for Plaintiff
                                           CALIFORNIA NURSES ASSOCIATION

Exhibit 1   22
000049

## **Demand for Jury Trial**

1

2        Plaintiff California Nurses Association, by and through their attorneys of record, hereby

3  demand a trial by jury as to all issues so triable in this action.

4

Dated: March 5, 2020              Respectfully submitted,

5

6                     CALIFORNIA NURSES ASSOCIATION
                       LEGAL DEPARTMENT

7

8              By _____

9                   Kyrsten B. Skogstad
                    Attorneys for Plaintiff

10                 CALIFORNIA NURSES ASSOCIATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1    23
000050

# Exhibit 1

# Exhibit 1

Exhibit 1
000051

# Verity Health

August 12, 2019

By U.S. Mail

Andy Prediletto
C.N.A.
225 West Broadway
Suite 500
Glendale, CA 91204
818-637-7129 (office) | 213-810-8222 (mobile)
aprediletto@calnurses.org

**Re:** **Notice Pursuant to Worker Adjustment and Retraining Notification Act
and the California WARN Act**

Dear Mr. Andy Prediletto:

This notice is being issued to you under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§2101 et seq. (the "WARN Act") and the California WARN Act, California Labor Code §§1400-1408 ("Cal-WARN Act"). The purpose of this notice is to inform you of the sale of St. Vincent Medical Center, located at 2131 West Third Street, Los Angeles, CA 90057 and St. Vincent Dialysis Center, located at 201 S. Alvarado St., Los Angeles, CA 90057 (together, "St. Vincent").

On August 31, 2018, Verity Health System of California, Inc. ("VHS") and sixteen of its affiliates, including St. Francis (referred to collectively with VHS and other debtor affiliates as the "Debtors") filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), and are being jointly administered under Lead Case No. 2:18-bk-20151. The Debtors have entered into an agreement to sell substantially all of the assets of St. Francis to Strategic Global Management, Inc. (the "Purchaser"), pursuant to which the Purchaser will purchase St. Vincent and related assets (the "Sale"). On April 17, 2019, the Bankruptcy Court entered an order approving the Sale.

In connection with the Sale, the Debtors will be separating the employment of all of St. Vincent's employees, which may result in an "employment loss" within the meaning of the WARN Act and the Cal-WARN Act. Under the Asset Purchase Agreement between the Debtors and the Purchaser, the Purchaser has agreed to make offers of employment to substantially all of St. Vincent's employees, subject to the other terms and conditions contained in such Asset Purchase Agreement.

The closing of the Sale is subject to certain regulatory and other approvals and the satisfaction of certain other conditions agreed to between the Debtors and the Purchaser. While the Debtors are optimistic that the Sale will close, there is a possibility that the Sale will be unsuccessful. In that event, St. Vincent may close and none of its employees may be hired by the Purchaser. Even if the Sale closes and St. Vincent remains open, employees at St. Vincent may suffer an "employment loss" within the meaning of the WARN Act and Cal-WARN Act because the Debtors will separate the employment of all of St. Vincent's

**Verity Health**

employees upon the closing of the Sale. For those employees, if any, who are not hired by the Purchaser, the employment loss is expected to be permanent.

Based on the best information available to date, we believe the Sale and separations of employment will occur between October 18, 2019 and October 31, 2019. A list of the job titles of positions affected and the names of the workers currently holding the affected jobs is attached hereto as Exhibit A. Pursuant to the WARN Act and Cal-WARN Act, this notice is being provided to you as soon as possible prior to any separations of employment.

Should circumstances change any of our plans with respect to the Sale, VHS will provide you with updated information. If you have any questions or require additional information, please do not hesitate to contact me at (424) 367-0733.

Sincerely,

Steven Sharrel
Chief Human Resources Officer

Enclosure: Exhibit A



**Verity Health**

2040 E Mariposa Avenue
El Segundo, CA 90245

## EXHIBIT A

List of Represented St. Vincent Employees - California Nurses Association

| Employee Name | Job Title |
|---|---|
| ABAD,JENNIFER K | RN, POB DIALYSIS PD-3 |
| ABAD,ROMEO G | RN, MED/SURG 7 |
| ABRISHAMIAN,MANDANA | RN, MED/SURG 6 |
| ACOYMO,KERWIN M | RN, EMERGENCY ROOM PD-3 |
| ADARO,VIDA T | RN, MED/SURG 6 |
| ADLAWAN-DOBLE,MARIA ROSELIE I | RN, AUDITOR - EMER. ROOM 10/40 |
| ADRAYAN,GILBERT C | RN, EMERGENCY ROOM PD-3 |
| ADRINEDA,LORINNE M | RN, ICU |
| AGUILAR,JUSTIN E | RN, EMERGENCY ROOM PD-1 |
| AGUSTIN,RACHELLE ANN C | RN, ICU |
| ALDANA,MARCO P | RN, ICU |
| ALDRETE,MANUEL M | CHARGE NURSE, SHORT STAY |
| ALIBUTOD,RODERICK H | RN, MED/SURG 6 |
| ALQUIROZ,JHOANNA M | RN, TELEMETRY |
| ALWAN,ALEXZANDRIA | RN, CASE MANAGEMENT PD-3 |
| AMADOR,PAMELA M | RN, ICU |
| AMPONG,GRANVILLE H | RN, ACUTE REHAB |
| APELIZAN,PAULA LORENA H | RN, ACUTE REHAB |
| APOLINAR,JOCELYN L | CHARGE NURSE, ICU |
| AQUINO,HILDA L | EDUCATOR, LEAD CLINICAL RN |
| ARGUETA-CORDERO,FRANCISCO J | RN, SHORT STAY |
| ARREGLO,VICTORIA A | RN, TELEMETRY |
| ARSUA,AILEEN E | RN, MED/SURG 7 |
| ASSADI,AMIR H | RN, INTERVENTIONAL RADIOLOGY |
| ASTAKHINA,LYUDMYLA | RN, EMERGENCY ROOM |
| ATIENZA,JORDAN | RN, EMERGENCY ROOM |
| BAE,STELLA N | RN, MED/SURG 7 KP |
| BAE,YEAHEUN | RN, ACUTE REHAB |
| BAL,JENNIFER JOY L | RN, TELEMETRY |
| BALCRUZ,THERESA I | RN, MED/SURG 6 |

verity.org

**Verity Health**

| Employee Name | Job Title |
|---|---|
| BALINGIT,CORAZON I | CHARGE NURSE, SURG & RECOVERY |
| BALINGIT,NORMITA V | RN, MED/SURG 6 |
| BALLADA,GLENDA S | RN, ICU |
| BALUYOT,VANESSA FAYE P | RN, CASE MANAGEMENT |
| BATAC,AIMEE A | RN, TELEMETRY |
| BATISTA,CRYSTAL L | RN, ICU |
| BAUTISTA,DINO LOREN M | RN, EMERGENCY ROOM |
| BAUTISTA PALANOG,MARICEL | RN, CATH LAB PD-1 |
| BAYLON,RONEL D | RN, MED/SURG 6 |
| BAZAN,GERARDO | CHARGE NURSE, INTER. RADIOLOGY |
| BELL,JESSICA M | RN, ICU |
| BELL,KENNETHA | RN, RECOVERY ROOM |
| BELLOSO,FRANCINE E | RN, TELEMETRY PD-1 |
| BERANGO,NICOMEDES | RN, MED/SURG 6 |
| BERNARDO,KATHLEEN A | RN, ICU |
| BIGASIN,JHOANNA | RN, MED/SURG 7 |
| BIRIOUKOV,LEONID | RN, ACUTE DIALYSIS PD-2 |
| BOESSI,CHRISTOPHINE K | RN, ICU |
| BOONE,LASHANDA | RN, MED/SURG 6 |
| BOTE,III,ROMERO P | RN, ACUTE REHAB |
| BRACAMONTE,JESSICA K | RN, ONCOLOGY |
| BUENO,REGINALD C | RN, MED/SURG 7 |
| BURCH,KATALEE | RN, MED/SURG 6 |
| BURRELL,LISA D | RN, TELEMETRY |
| CABALLERO,JEFFREY E | RN, EMERGENCY ROOM |
| CABANAS,JEANETTE A | RN, MED/SURG 6 |
| CABAUATAN DUMAG,MICHELLE | CHARGE NURSE, MED/SURG 6 |
| CAISIP,THADEUS B | RN, ACUTE DIALYSIS |
| CALIBOSO,MITCH DATOR | RN, EMERGENCY ROOM PD-2 |
| CALZADO,JANET O | RN, TELEMETRY |
| CAMPOS,YASMINI V | RN, ONCOLOGY |
| CANLAS,MICHAEL | RN, EMERGENCY ROOM PD-3 |
| CAO,JENNIFER T | RN, MED/SURG 6 |

verity.org

**Verity Health**

| Employee Name | Job Title |
|---|---|
| CARO,ALYSSA L | RN, ICU |
| CARREIRO,ANNIE E | RN, TELEMETRY |
| CARRILLO,MARICELA | CHARGE NURSE, MED/SURG 7 |
| CASCONE,FRANCHESCA M | RN, ICU |
| CASTELLTORT,MARIE C | RN, ACUTE REHAB |
| CEBALLOS,VILMAR M | RN, ONCOLOGY |
| CEMANESEVANGELISTA,CLARISSE M | RN, MED/SURG 6 |
| CENTENO,MARIA LIBERTY C | RN, ICU |
| CERAOS,JERIC | RN, NURSING ADMIN |
| CERVANTES,REDENTOR T | CHARGE NURSE, EMERGENCY ROOM |
| CHAE,JEONG R | RN, EMERGENCY ROOM |
| CHAN,ELAINE M | RN, EMERGENCY ROOM PD-1 |
| CHAN,LINH N | RN, TELEMETRY |
| CHANG,AH YEON | RN, CASE MANAGEMENT |
| CHANG,MARY W | RN, SURG & RECOVERY |
| CHANG,SUN Y | RN, TELEMETRY |
| CHAVEZ,SILVIA M | RN, ICU |
| CHEA,DAVY | RN, ICU |
| CHO,ANDY S | RN, EMERGENCY ROOM |
| CHO,JUNG H | RN, TELEMETRY |
| CHO,MEONGHEE | RN, RECOVERY ROOM |
| CHOI,ALICIA A | RN, MED/SURG 7 |
| CHOI,BO YEON H | RN, CASE MANAGEMENT PD-1 |
| CHOI,EUN AH | RN, TELEMETRY |
| CHOI,IN H | RN, MED/SURG 6 |
| CHOI,MIRAN | RN, POB DIALYSIS |
| CHOI,PILL | RN, SHORT STAY |
| CHOI,SOONKI | RN, TELEMETRY |
| CHOTAROONVIPHAT,LADDA | RN, EMERGENCY ROOM |
| CHUA,HONEE L | EDUCATOR, CLINICAL RN 10HR |
| CHUA,MA SHEILA G | RN, MED/SURG 7 |
| CHUNG,HA NIE C | RN, MED/SURG 6 |
| CLARK,ELIZABETH A | RN, ICU |

verity.org

**V Verity Health**

| Employee Name | Job Title |
|---|---|
| CONCEPCION,RODEN B | RN, ICU |
| CORONA,DAISY | RN, MED/SURG 7 |
| CORTADA,DANA O | RN, CASE MANAGEMENT |
| CORTES-MORA,YESENIA | RN, MED/SURG 6 |
| CRISOSTOMO,TABETHA P | RN, POB DIALYSIS |
| CROWLEY,VALERIE J | RN, RECOVERY ROOM |
| CROWLEY,VERONICA M | RN, CATH LAB |
| CRUDUP,IMANI M | RN, SURG & RECOVERY |
| CRUZ,LIEZL Q | RN, CASE MANAGEMENT PD-1 |
| CRUZ,SYLVIA P | RN, ICU |
| CUARESMA,DENICE K | RN, ONCOLOGY |
| CUBE,REALLINE M | RN, MED/SURG 7 |
| CUELLAR,MATTHEW S | RN, TELEMETRY |
| CUPP,CHRISTINE J | RN, RECOVERY ROOM 10HR |
| DADASHYAN,INNA | RN, TELEMETRY PD-1 |
| DADHANIA,AKRUTI J | RN, ACUTE REHAB |
| DANG,PAULINE L | RN, ACUTE DIALYSIS |
| DANIEL,JOANNA | RN, EMERGENCY ROOM |
| DAO,CONNIE P | RN, ICU |
| DATOR,COSSETTE P | RN, ONCOLOGY |
| DAVIDSON,ALTHIA J | RN, EMERGENCY ROOM |
| DE LEON,BRENNA A | RN, TELEMETRY |
| DE QUIROS,IVY LEE V | RN, POB DIALYSIS PD-1 |
| DEEGAN,GERARD J | RN, SURG & RECOVERY |
| DEL FIERRO,JOSEPH ARNEL M | RN, ACUTE DIALYSIS |
| DERECI,MARY ANN | RN, SHORT STAY |
| DINSAY,ANNABELLE D | RN, MED/SURG 7 |
| DIONISIO,BERNARD S | RN, EMERGENCY ROOM PD-1 |
| DORAN,CHARLES C | RN, ACUTE DIALYSIS |
| DORIA,MIRIAM S | RN, MED/SURG 6 PD-1 |
| DUMANSKY,ELENA | RN GI LAB-8/80 |
| DUMLAO,TERESITA A | RN, SURG & RECOVERY |
| DUTTON,NOELLE M | RN, CATH LAB (STEMI) |

verity.org

**Verity Health**

| Employee Name | Job Title |
|---|---|
| EHSAN,RAHAL | RN, MED/SURG 7 |
| ENRIQUEZ,VERE JONAS S | RN CASE MANAGEMENT |
| EOM,HOKYOUNG | RN, SURG & RECOVERY |
| ESTELL,CORNELIA S | CHARGE NURSE, GI LAB |
| ESTRADA,MARTIN A | RN, ONCOLOGY |
| EUSEBIO,CECILIA | RN, POB DIALYSIS |
| EVANGELISTA,ALLAN F | CHARGE NURSE, ONCOLOGY |
| FABROS,NASH A | RN, MED/SURG 7 |
| FAMILARA,MYRA B | RN, SURG & RECOVERY PD-3 |
| FERNANDEZ,NOLIE V | RN, TELEMETRY |
| FERNANDEZ,RODIERAECA C | RN, ICU |
| FERRER,RONALD M | RN, ICU |
| FINLEY,KASUMI | RN, TELEMETRY |
| FITKOWSKI,ANDREW E | RN, MED/SURG 6 |
| FONSECA,ANDRES | RN, TELEMETRY |
| GAMUROT,ANNE CAROLINE E | RN, TELEMETRY |
| GANZ,JEFFREY A | RN, TELEMETRY |
| GARCIA,DOROTHY E | RN, MED/SURG 6 |
| GARCIA,MARIA ROSARIO C | RN, ICU |
| GARCIA,RHODORA D | RN, SHORT STAY |
| GARCIA,SHERWIN R | CHARGE NURSE, MED/SURG 7 |
| GEMZON,JOPHE A | CHARGE NURSE, ICU |
| GERMINAL,GLADYS F | RN, CATH LAB |
| GHIRMAY,MICKY | RN, EMERGENCY ROOM |
| GILL,JAGVEER S | RN, ONCOLOGY |
| GO,EDWIN L | RN, MED/SURG 7 |
| GOLORAN,PATRICIA M | RN, NURSING ADMIN |
| GOMEZ,AARON I | RN, ICU |
| GONZALES,KRISTINE M | RN, MED/SURG 7 |
| GONZALES,YVETTE | CHARGE NURSE, MED/SURG 6 |
| GROEHLER,MIRA | RN, ACUTE DIALYSIS |
| GUMAYAGAY,VINA N | RN, ACUTE REHAB |
| GUTIERREZ,LUZ M | RN, TELEMETRY |

verity.org

# Verity Health

| Employee Name | Job Title |
|---|---|
| GUZMAN,JAMES BRIAN S | RN, MED/SURG 6 |
| HA,DA YEONG | RN, MED/SURG 7 KP |
| HAKOPIAN,MELINA D | RN, ICU PD-3 |
| HAMILTON,KADE | RN, NURSING ADMIN |
| HAN,BONA I | RN, MED/SURG 6 |
| HEARN,TAYLOR | RN, TELEMETRY |
| HEO,GJIYOUNG | RN, SURG & RECOVERY |
| HERTZ,ALEXANDRA L | RN, TELEMETRY |
| HIPUS,JOSEFINA C | RN, CATH LAB |
| HO,THERESE T | RN, ICU |
| IBARRA,JACOB | RN, EMERGENCY ROOM PD-3 |
| IMAYSAY,GENEVIEVE | RN, SHORT STAY |
| INNOCENT,COURTNEY N | RN, TELEMETRY |
| INTAL,MARIVIC GRACE D | RN, MED/SURG 7 |
| ITANI,KAZUMI | RN, MED/SURG 6 |
| IZUCHUKWU-MUONAGOR,RITA U | RN, TELEMETRY |
| JANG,EUNHAE | RN, ICU |
| JANG,JI-YOUNG | RN, ACUTE REHAB |
| JANG,JONGSOOK | RN, MED/SURG 7 KP |
| JAVIER,CAROL D | RN, TELEMETRY |
| JIMENEZ,EVANGELINE B | RN, SHORT STAY 12HR |
| JUAREZ,MARIANA | RN, ICU |
| JUNG,JU YOUNG | RN, ICU PD-1 |
| KANG,MISEON | RN, TELEMETRY |
| KANG,SANDY | RN, ICU |
| KANG,SO HEE | RN, SURG & RECOVERY 2 |
| KATIGBAK,AGNES M | RN, MED/SURG 6 |
| KILALA,MARY JANE C | RN, SHORT STAY |
| KIM,AIMEE K | RN, ICU |
| KIM,BOOYOUNG | RN, MED/SURG 7 |
| KIM,GEUMCHUL | RN, ACUTE DIALYSIS |
| KIM,HEEJUNG | RN, TELEMETRY |
| KIM,HYANGHEE | RN, SHORT STAY |

verity.org

**V Verity Health**

| Employee Name | Job Title |
|---|---|
| KIM,HYEON SOO | RN, MED/SURG 6 |
| KIM,JUNGMIN | RN, ACUTE REHAB |
| KIM,JUNGWOO | RN, TELEMETRY |
| KIM,KAREN Y | RN, ICU |
| KIM,KUNTHY K | CHARGE NURSE, TELEMETRY |
| KIM,MEEYUN | RN, MED/SURG 7 KP |
| KIM,SINSIL | RN, CATH LAB |
| KO,HYANGMI | RN, MED/SURG 7 KP |
| KUSAKARI,TOYOMI | RN, MED/SURG 6 |
| LAGUMBAY,SUZETTE O | RN, TELEMETRY |
| LARGAESPADA,FRANCES | RN GI LAB-8/80 |
| LAY,XUANANH T | RN, ICU |
| LEE,BO K | RN, MED/SURG 6 |
| LEE,EUNJIN J | RN, CATH LAB |
| LEE,GINA J | RN, TELEMETRY |
| LEE,HYAE JIN | RN, SHORT STAY |
| LEE,JOMAR C | RN, MED/SURG 6 |
| LEE,NAM S | RN, MED/SURG 6 |
| LEE,ROBIN M | RN, MED/SURG 6 |
| LEE,SARAH SO-YOUNG Y | RN, MED/SURG 6 |
| LEE,YEONHEE | RN, MED/SURG 7 KP |
| LEE,YUN J | RN, POB DIALYSIS PD-2 |
| LEGASPI,ROMMEL E | RN, MED/SURG 7 |
| LEMUS,LITA A | RN, CASE MANAGEMENT |
| LENON,AUDREY Q | RN, CASE MANAGEMENT |
| LEON,CINZIA | RN, MED/SURG 6 |
| LEYRAN,NOEL V | RN, ACUTE DIALYSIS |
| LICAYAN,SORIANO B | RN, ACUTE DIALYSIS |
| LICUP,RONALD A | CHARGE NURSE, TELEMETRY |
| LIM,HYO K | RN, SHORT STAY |
| LIM,REBECCA A | RN, POB DIALYSIS |
| LIM,ROWENA A | RN, MED/SURG 6 |
| LIM,SEOKSOON | RN, POB DIALYSIS |

verity.org

**V Verity Health**

| Employee Name | Job Title |
| --- | --- |
| LIM,SEUNGAE | RN, MED/SURG 7 KP |
| LIM,TERESA | RN, EMERGENCY ROOM |
| LITTLE,MARIA F | RN, SHORT STAY 12HR |
| LO,CELINA Y | RN, MED/SURG 6 |
| LOPES,STEVEN N | RN, TELEMETRY |
| LOPEZ,ANGELA T | RN, TELEMETRY |
| LOPEZ,MA VICTORIA T | RN, MED/SURG 6 |
| LORENZO,JASMINE R | RN, TELEMETRY |
| LORICA,RHODA R | RN, MED/SURG 7 |
| LOZANO,CARMEN C | RN, ICU |
| LUISTRO,ROMEO C | RN, CASE MANAGEMENT |
| LUZURIAGA,RYAN S | RN, MED/SURG 6 |
| LYON,LORNA C | RN, SURG & RECOVERY |
| MACAPAGAL,YOLANDA L | RN, ONCOLOGY |
| MACASERO,BEN REAGAN T | RN, ICU |
| MADLANGBAYAN,HAYCELYN O | RN, MED/SURG 7 |
| MALIT,CHERYL JOY L | RN, MED/SURG 7 KP |
| MANALO,ALEXIS P | RN, EMERGENCY ROOM PD-2 |
| MANALO,ARLENE B | RN, ICU |
| MANALO,EVELYN M | RN, ONCOLOGY |
| MANALO,MARIA CECILIA | RN, MED/SURG 6 |
| MANAYTAY,NELLAFLOR G | RN, ICU |
| MARQUEZ,JESSICA P | RN, ICU |
| MARTINEZ,KAREN KAYE R | RN, MED/SURG 7 KP |
| MAYFIELD,CHRIS E | RN, INTERVENTIONAL RADIOLOGY |
| MCFARLAND,ALLEN GRACE C | RN, CASE MANAGEMENT |
| MENDOZA,JOCELYN S | RN, ICU |
| MENDOZA,KEIR | RN, EMERGENCY ROOM |
| MENDOZA,MARILOU M | RN, SURG & RECOVERY |
| MESA,ROCIO | RN, EMERGENCY ROOM |
| MILIAN,RAMIRO A | RN, MED/SURG 6 |
| MINGUEZ,MARY MAE T | RN, MED/SURG 7 PD-1 |
| MISOLA,GABRIELLE P | RN, ONCOLOGY |

verity.org

# Verity Health

| Employee Name | Job Title |
|---|---|
| MOJARRO,YARETH M | RN, CASE MANAGEMENT PD-2 |
| MOORE,PORTIA | RN, EMERGENCY ROOM |
| MORRIS,JENNIFER S | RN, TELEMETRY |
| MUNOZ,TAMARA M | RN, TELEMETRY |
| MUZYCHUK,NELLI A | RN, SURG & RECOVERY 2 |
| MYUNG,JESSICA J | RN, ACUTE REHAB |
| NAJARRO,NANCY T | CHARGE NURSE, EMERGENCY ROOM |
| NAM,JISUN | RN, TELEMETRY |
| NATIVIDAD,PAUL J | RN, ICU |
| NGUYEN,DON M | RN, TELEMETRY |
| NGUYEN,KELLY THUY-KHANH S | RN, ACUTE REHAB |
| NICOLAS,ELI JOHN L | RN, EMERGENCY ROOM PD-2 |
| NICOLAS,EMILY A | RN, TELEMETRY |
| NILO,VIDAL P | RN, RECOVERY ROOM |
| NOBLEFRANCA,CHITA O | RN, ACUTE REHAB |
| NOTARIO,ZACHARY | RN, TELEMETRY PD-1 |
| NYE,HAYLEY S | RN, TELEMETRY |
| OANDASAN,JAYCEL J | RN, CASE MANAGEMENT |
| OBILLE,MARK A | RN, MED/SURG 7 |
| OCAMPO,GEORGE R | RN, MED/SURG 7 |
| ODIA,IRENE | RN, ICU |
| OH,KYUNG SOON | RN, POB DIALYSIS |
| OH,YESUL | RN, ACUTE DIALYSIS PD-3 |
| OLYNYK,CELESTE A | RN, EMERGENCY ROOM |
| ONYEJIJI,IJEOMA | RN, EMERGENCY ROOM |
| ORAIS,GRECITA PRIMA D | RN, RECOVERY ROOM |
| ORANTE,CHRISTIAN P | RN, MED/SURG 6 |
| ORELLANA,GABRIELLA | RN, EMERGENCY ROOM |
| ORIENZA,MINA RIA S | RN, ICU |
| ORIS,JACQUELINE A | RN, MED/SURG 6 |
| OSE,TATIANA R | RN, MED/SURG 6 |
| OUATTARA,NAGNINLTAHA N | RN, TELEMETRY |
| PAINAGA,MARY DIVINE GRACE D | RN, EMERGENCY ROOM |

verity.org

**Verity Health**

| Employee Name | Job Title |
| --- | --- |
| PALANCA,RYAN P | RN, MED/SURG 6 |
| PARK,CHUNG AH | RN, TELEMETRY |
| PARK,ELLEN Y | RN, ACUTE REHAB |
| PARK,JINSUN | RN, SHORT STAY |
| PARK,KI | RN, ACUTE DIALYSIS |
| PARK,SUE A | RN, TELEMETRY |
| PARUNGAO,ARLENE P | RN, TELEMETRY |
| PASCUA,JULIA B | RN, ACUTE REHAB |
| PENSERGA,MA BRENDA | RN, EMERGENCY ROOM |
| PERALTA,VIOLETA A | RN, ACUTE REHAB |
| PEREIRA,JOSUE | RN, ICU PD-1 |
| PESA,EVELYN T | RN, TELEMETRY |
| PETERSON,MA ARSENIA S | RN, ICU |
| PLAZO,JONATHAN C | RN, ONCOLOGY |
| PONCE,BELKI G | RN, ICU |
| POSADAS,NIDA J | RN, MED/SURG 6 |
| POSUELOZ,ARIEL S | RN, TELEMETRY |
| POSUELOZ,ARIEL | RN, SURG & RECOVERY |
| PRYOR,VINCENT F | RN, TELEMETRY |
| QUILA,REMIEL A | CHARGE NURSE, EMERGENCY ROOM |
| QUITZON,MARIA N | RN, EMERGENCY ROOM PD-3 |
| RAMIREZ,EVELYN B | RN, TELEMETRY |
| RAMIREZ PONCE,LUCIO S | CHARGE NURSE, ICU |
| RAMOS,SHEILA A | RN, CASE MANAGEMENT |
| RAMOS GIL,JULIO C | RN, ICU |
| RANGEL,SANDRA | RN, ACUTE REHAB |
| REBUYACO,ARIANNA | RN, ONCOLOGY |
| REBUYACO,TRISTAN L | RN, ICU |
| REDDIX,TRACY J | CHARGE NURSE, TELEMETRY |
| REYES,JENNIE | RN, NURSING ADMIN |
| REYES,KAYLA LYNN T | RN, ICU |
| RINGPIS,MARYLOU B | RN, ICU |
| RODRIGUEZ,DENISE A | RN, ONCOLOGY |

verity.org

**V**erity Health

| Employee Name | Job Title |
|---|---|
| ROH,HAE S | RN, ACUTE DIALYSIS |
| RUANTO,ROZALDO C | RN, CATH LAB |
| RUIZ,JENNIE L | RN, MED/SURG 7 |
| SADEK,SHERINE | RN, ICU |
| SALAZAR,GUSTAVO P | RN, EMERGENCY ROOM PD-1 |
| SALCEDO,CHERYL ANN P | CHARGE NURSE, MED/SURG 6 |
| SALDANA,MARIA V | RN, EMERGENCY ROOM PD-1 |
| SAMSON,TIFFANY A | RN, CASE MANAGEMENT PD-1 |
| SANCHEZ,BEATRIZ A | RN, SURG & RECOVERY |
| SANDIGAN,ULYSSES M | CHARGE NURSE, EMERGENCY ROOM |
| SANTIAGO,PATRICIA E | RN, NURSING ADMIN |
| SANTIAGO,ZAYRA A | RN, NURSING ADMIN |
| SANTOS,DONNABEL J | RN, MED/SURG 6 |
| SANTOS,ROSEMARIE A | RN, CASE MANAGEMENT |
| SATO,ASAMI | RN, TELEMETRY |
| SEGISMUNDO,MAXINE G | RN, TELEMETRY |
| SENATIN,VADA FRANCEZCA | RN, TELEMETRY |
| SEO,MOON HYANG | CHARGE NURSE, MED/SURG 6 |
| SHEBELYAN,KRISTINA | RN, EMERGENCY ROOM |
| SHIM,GEMMA S | RN, MED/SURG 7 KP |
| SHIMASAKI,SAYURI H | RN, ICU |
| SHIN,ALICE S | RN, TELEMETRY |
| SHIN,ANNIE J | RN, TELEMETRY |
| SHIN,SUNGMIN | RN, SHORT STAY |
| SHIN,YOUNG SUK | RN, ACUTE DIALYSIS |
| SHORT,JENNIFER L | RN, TELEMETRY |
| SIA,MARY ANN P | RN, MED/SURG 6 |
| SIAPNO,JOANN P | RN, ACUTE REHAB |
| SMITH-ANDERSON,EMMA D | RN, TELEMETRY |
| SOK,MICHELLE M | CHARGE NURSE, TELEMETRY |
| SOLIS,KARINA | RN, MED/SURG 6 |
| SONG,EUN O | RN, MED/SURG 6 |
| SONG,JOO Y | RN, EMERGENCY ROOM |

verity.org

**V** **Verity Health**

| Employee Name | Job Title |
|---|---|
| STANWOOD,TERRICA | RN, ICU |
| STUTZMAN,SHELBY | RN, TELEMETRY |
| SUH,YURI | RN, MED/SURG 6 |
| TAI,ELLEN P | RN, SHORT STAY |
| TAKAMATSU,RIEKO | RN, TELEMETRY |
| TAMANAHA,MA CORAZON S | RN, SURG & RECOVERY |
| TAN,JENNIFER J | RN, ICU |
| TAN,JULIE ANN K | RN, SURG & RECOVERY |
| TEVES,RIA A | RN, CASE MANAGEMENT PD-1 |
| THOMAS,CRISTINA | RN, ACUTE DIALYSIS |
| TICON-GALLARDO,MARY GRACE R | RN, ACUTE REHAB |
| TOLEDO,MA KHARISMA D | CHARGE NURSE, ICU |
| TOLENTINO,CHONA N | CHARGE NURSE, ONCOLOGY |
| TRAN,DIEM T | RN, MED/SURG 6 PD-3 |
| TREADWELL,JULITA S | RN, ICU |
| TRINH,KATHY | RN, ICU |
| TULANDA,NSIMBA | RN, ACUTE DIALYSIS |
| UCHE,PATRICIA I | RN, MED/SURG 7 |
| UMALI,MARY KRISTINE L O | RN, MED/SURG 7 |
| UMALI,ROSANNE O | RN, ICU |
| VALISNO SANCHEZ,MARIA V | RN, EMERGENCY ROOM |
| VALLES,GIL | RN, SURG & RECOVERY |
| VALMEO,JAN MICHAEL A | RN, ICU |
| VARDANYAN,KARMEN | RN, MED/SURG 6 |
| VASQUEZ,GRISELDA | RN, MED/SURG 6 |
| VERGARA,HERMIE M | RN, MED/SURG 6 |
| VIDRIO,MARISELA M | RN, TELEMETRY |
| VILLAR,MARNIT N | RN, POB DIALYSIS |
| VILLAROMAN,CHIQUI G | RN, CATH LAB |
| WEBB-FRANCOIS,WENDY | RN, ICU |
| WILLIAMS,JULIE V | RN, MED/SURG 7 |
| WILLIAMS,MARIA B | RN, TELEMETRY |
| WILSON,MICHELLE | RN, NURSING ADMIN |

Exhibit A - List of Represented St. Vincent Employees - California Nurses Association                    12

**V Verity Health**

| Employee Name | Job Title |
|---|---|
| WU,DEBORAH | RN, TELEMETRY |
| YAMZON,ARMI O | RN, ICU |
| YANG,MARIA ROSELLE | RN, CASE MANAGEMENT PD-1 |
| YANG-SERPAS,AMY F | RN, ICU |
| YAO,SUJUE | RN, ACUTE REHAB |
| YU,FERNANDO II L | RN, MED/SURG 7 |
| YUN,CHRISTINA S | RN, SURG & RECOVERY 2 |
| ZABLAN,RODERICK D | RN, EMERGENCY ROOM PD-1 |

# Exhibit 2

# Exhibit 2

Exhibit 1
000067



2040 E Mariposa Avenue
El Segundo, CA 90245

October 23, 2019

VIA EMAIL

Andy Prediletto
C.N.A.
225 West Broadway
Suite 500
Glendale, CA  91204
818-637-7129 (office) | 213-810-8222 (mobile)
aprediletto@calnurses.org

**Re:    Postponement of Terminations of Employment - WARN Extension**

Dear Mr. Andy Prediletto:

This notice is being provided in follow up to the August 12, 2019 notice you received under the Worker Adjustment and Retraining Notification Act and the California WARN Act advising that separations of employment would occur between October 18, 2019 and October 31, 2019.

As you know, Verity Health System of California, Inc. and certain affiliates entered into a Court approved agreement ("Agreement") to sell substantially all of the assets of St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center, Seton Medical Center and Seton Medical Center Coastside (together, the "Hospitals") to Strategic Global Management, Inc. ("SGM"), pursuant to which SGM will purchase the Hospitals and related assets (the "Sale").

The Agreement requires satisfaction of certain milestones to complete the Sale.  Not all of the milestones have been met.  Consequently, the separations of employment must be postponed and will not occur at the time originally anticipated.  At this time, we anticipate the Sale and separations of employment will occur between **November 17, 2019 and November 30, 2019**.

We will continue to keep you apprised of any new developments and will provide you with updated information should circumstances change with respect to the Sale and the separations of employment.  If you have any questions or require additional information, please do not hesitate to contact me at (424) 367-0733.

We appreciate your understanding during this time of transition.

Sincerely,

Steven Sharrer
Chief Human Resources Officer

Exhibit 1
000068

verity.org

# Exhibit 3

# Exhibit 3

Exhibit 1
000069



2040 E Mariposa Avenue
El Segundo, CA 90245

November 25, 2019

<u>By E-Mail</u>

Andy Prediletto
CNA
Email: aprediletto@calnurses.org

**Re:** **Further Postponement of Terminations of Employment - WARN Extension**

Dear Mr. Prediletto:

You were initially notified that separations of employment would occur between October 18, 2019 and October 31, 2019, pursuant to the notice under the Worker Adjustment and Retraining Notification Act and the California WARN Act, dated August 12, 2019.  This termination window was subsequently extended to November 17 - November 30, 2019.  We are now writing to notify you that the separations of employment will be further postponed due to the circumstances noted below.

As you know, Verity Health System of California, Inc. and certain affiliates ("Debtors") entered into a Court approved agreement ("Agreement") to sell substantially all of the assets of St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center, Seton Medical Center and Seton Medical Center Coastside (together, the "Hospitals") to Strategic Global Management, Inc. ("SGM"), pursuant to which SGM will purchase the Hospitals and related assets (the "Sale").

The Debtors continue to work expeditiously for a prompt close of the Sale with SGM.  For example, the Debtors obtained an order from the court regarding the Attorney General conditions and reached a settlement with the U.S. Department of Health and Human Services.  We are notifying you that we anticipate the Sale and separations of employment will occur between **December 6, 2019 and December 19, 2019.**

We will keep you apprised with respect to the Sale and the separations of employment.  If you have any questions or require additional information, please do not hesitate to contact me at (424) 367-0733.

We appreciate your continued understanding during this time of transition.

Sincerely,

Steven Sharrer
Chief Human Resources Officer

Exhibit 1
000070

verity.org

# Exhibit 4

# Exhibit 4

Exhibit 1
000071

---------- Forwarded message ---------

**From:** Adcock, Rich <RichAdcock@verity.org>
**Sent:** Wednesday, December 18, 2019 2:50:17 PM
**Subject:** Important Update

Dear Colleagues,

The KPC Group (aka Strategic Global Management, Inc.) failed to close the sale transaction, as ordered by the Bankruptcy Court.  As a result, your employment will <u>NOT</u> end on December 19, 2019, as we had anticipated.

This communication is to follow up on our most recent letter pursuant to the Worker Adjustment and Retraining Notification Act and the California WARN Act, notifying you that we anticipated the sale of St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center, Seton Medical Center and Seton Medical Center Coastside to The KPC Group and the separation of your employment to occur between December 6, 2019 and December 19, 2019.

We will keep you apprised with respect to any further developments relating to your employment.  We sincerely appreciate your service and dedication to our patients.

Thanks,

Rich

Case 2:20-cv-02625-SVW   Document 1   Filed 03/19/20   Page 74 of 95   Page ID #:74

# Exhibit 5

# Exhibit 5

Exhibit 1
000074



January 10, 2020

<u>By U.S. Mail and Email</u>

Andrew Prediletto
C.N.A.
225 West Broadway, Suite 500
Glendale, CA 91204
aprediletto@calnurses.org

Re:    <u>**Notice Pursuant to Worker Adjustment and Retraining Notification Act
         and the California WARN Act**</u>

Dear Mr. Andrew Predilleto:

This notice is being issued to you under the Worker Adjustment and Retraining Notification Act, 29
U.S.C. §§2101 et seq. (the "WARN Act") and the California WARN Act, California Labor Code
§§1400-1408 ("Cal-WARN Act").  The purpose of this notice is to inform you of the permanent closure
of St. Vincent Medical Center, located at 2131 West Third Street, Los Angeles, CA 90057, and St.
Vincent Dialysis Center, located at 201 S. Alvarado St., Los Angeles, CA 90057 (together, "St.
Vincent").

On August 31, 2018, Verity Health System of California, Inc. ("VHS") and sixteen of its affiliates,
including St. Vincent (referred to collectively with VHS and other debtor affiliates as the "Debtors"),
filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Central District
of California, and are being jointly administered under Lead Case No. 2:18-bk-20151.

The Debtors entered an agreement to sell St. Vincent and other assets to KPC Group, aka Strategic
Global Management, Inc. (together, "SGM"), which was approved by the Bankruptcy Court.  In
connection with the planned sale, we previously noticed you of the anticipated separations of
employment in accordance with the WARN Act and Cal-WARN Act.  The timing of that WARN notice
was based upon the agreement with SGM.  The Debtors expected the sale to be completed because the
Bankruptcy Court approved the sale and entered an order providing that SGM was obligated to close the
sale.  SGM, however, did not close the sale.  Given SGM's failure to close the sale transaction, and there
being no feasible alternative for continued operations, the Debtors made the difficult decision to close
St. Vincent.  The Court granted the Debtors' emergency motion for authority to close St. Vincent on
January 9, 2020 (the "Order").  Consequently, you are receiving this WARN notice.

We know that you were aware of the separations of employment at St. Vincent based on the prior
WARN notice you received.  We had hoped there would be an opportunity for continued employment
with SGM when the sale closed.  In light of the unforeseen circumstances relating to the sale and the

Exhibit 1
000075
verity.org



unexpected need to close St. Vincent as a last resort, this additional WARN notice is being provided to you as soon as practicable after the Order.

In connection with the closure, the Debtors will be separating the employment of all of St. Vincent's employees. Based on the best information available to date, we believe the closure and separations of employment will occur between **January 14, 2020 and January 27, 2020**. A list of the job titles of positions affected and the names of the workers currently holding the affected jobs is attached hereto as Exhibit A.

If you have any questions or require additional information, please do not hesitate to contact me at (424) 367-0733.


Sincerely,

Steven Sharrer
Chief Human Resources Officer



Enclosure: Exhibit A

Exhibit 1
000076

verity.org

Case 2:20-cv-02625-SVW Document 1 Filed 03/19/20 Page 75 of 95 Page ID #:57



2040 E Mariposa Avenue
El Segundo, CA 90245

## EXHIBIT A

List of Represented St. Vincent Employees - CNA

| Employee Last Name | First Name | Job Title |
|---|---|---|
| ADRINEDA | LORINNE | RN, ICU |
| AGUSTIN | RACHELLE ANN | RN, ICU |
| ALDANA | MARCO | RN, ICU |
| AMADOR | PAMELA | RN, ICU |
| APOLINAR | JOCELYN | CHARGE NURSE, ICU |
| BALLADA | GLENDA | RN, ICU |
| BATISTA | CRYSTAL | RN, ICU |
| BERNARDO | KATHLEEN | RN, ICU |
| BOESSI | CHRISTOPHINE | RN, ICU |
| CARO | ALYSSA | RN, ICU |
| CENTENO | MARIA LIBERTY | RN, ICU |
| CHAVEZ | SILVIA | RN, ICU |
| CHEA | DAVY | RN, ICU |
| CLARK | ELIZABETH | RN, ICU |
| CRUZ | SYLVIA | RN, ICU |
| DAO | CONNIE | RN, ICU |
| FERNANDEZ | RODIERAECA | RN, ICU |
| FERRER | RONALD | RN, ICU |
| GEMZON | JOPHE | CHARGE NURSE, ICU |
| GOMEZ | AARON | RN, ICU |
| HAKOPIAN | MELINA | RN, ICU PD-3 |
| HO | THERESE | RN, ICU |
| JANG | EUNHAE | RN, ICU |
| JUAREZ | MARIANA | RN, ICU |
| JUNG | JU YOUNG | RN, ICU PD-1 |

Exhibit A - 1

Exhibit 1
000077

verity.org



| Employee Last Name | First Name | Job Title |
|---|---|---|
| KANG | SANDY | RN, ICU |
| KIM | AIMEE | RN, ICU |
| KIM | KAREN | RN, ICU |
| LAY | XUANANH | RN, ICU |
| LOZANO | CARMEN | RN, ICU |
| MANALO | ARLENE | RN, ICU |
| MANAYTAY | NELLAFLOR | RN, ICU |
| NATIVIDAD | PAUL | RN, ICU |
| ODIA | IRENE | RN, ICU |
| ORIENZA | MINA RIA | RN, ICU |
| PEREIRA | JOSUE | RN, ICU PD-1 |
| PETERSON | MA ARSENIA | RN, ICU |
| PONCE | BELKI | RN, ICU |
| RAMIREZ PONCE | LUCIO | CHARGE NURSE, ICU |
| RAMOS GIL | JULIO | RN, ICU |
| REBUYACO | TRISTAN | RN, ICU |
| RESURRECCION | NINA GRACE | RN, ICU |
| REYES | KAYLA LYNN | RN, ICU |
| RINGPIS | MARYLOU | RN, ICU |
| SADEK | SHERINE | RN, ICU |
| SHIMASAKI | SAYURI | RN, ICU |
| STANWOOD | TERRICA | RN, ICU |
| TAN | JENNIFER | RN, ICU |
| TOLEDO | MA KHARISMA | CHARGE NURSE, ICU |
| TREADWELL | JULITA | RN, ICU |
| TRINH | KATHY | RN, ICU |

Exhibit A - 2

Exhibit 1
000078

verity.org



| Employee Last Name | First Name | Job Title |
| --- | --- | --- |
| UMALI | ROSANNE | RN, ICU |
| VALMEO | JAN MICHAEL | RN, ICU |
| YAMZON | ARMI | RN, ICU |
| ALQUIROZ | JHOANNA | RN, TELEMETRY |
| ARREGLO | VICTORIA | RN, TELEMETRY |
| BAL | JENNIFER JOY | RN, TELEMETRY |
| BATAC | AIMEE | RN, TELEMETRY |
| BELLOSO | FRANCINE | RN, TELEMETRY PD-1 |
| BURRELL | LISA | RN, TELEMETRY |
| CALZADO | JANET | RN, TELEMETRY |
| CARREIRO | ANNIE | RN, TELEMETRY |
| CHANG | SUN | RN, TELEMETRY |
| CHO | JUNG | RN, TELEMETRY |
| CHOI | EUN AH | RN, TELEMETRY |
| CHOI | SOONKI | RN, TELEMETRY |
| CORTEZ | SHANNON | RN, TELEMETRY |
| CUELLAR | MATTHEW | RN, TELEMETRY |
| DADASHYAN | INNA | RN, TELEMETRY PD-1 |
| DE LEON | BRENNA | RN, TELEMETRY |
| FERNANDEZ | NOLIE | RN, TELEMETRY |
| FINLEY | KASUMI | RN, TELEMETRY |
| GAGUAN | CHRISTINA | RN, TELEMETRY |
| GAMUROT | ANNE CAROLINE | RN, TELEMETRY |
| GUTIERREZ | LUZ | RN, TELEMETRY |
| HERTZ | ALEXANDRA | RN, TELEMETRY |
| INNOCENT | COURTNEY | RN, TELEMETRY |

Exhibit A - 3

Exhibit 1
000079

verity.org



| Employee Last Name | First Name | Job Title |
|---|---|---|
| IZUCHUKWU-MUONAGOR | RITA | RN, TELEMETRY |
| KANG | MISEON | RN, TELEMETRY |
| KIM | JUNGWOO | RN, TELEMETRY |
| KIM | KUNTHY | CHARGE NURSE, TELEMETRY |
| LAGUMBAY | SUZETTE | RN, TELEMETRY |
| LEE | GINA | RN, TELEMETRY |
| LICUP | RONALD | CHARGE NURSE, TELEMETRY |
| LOPES | STEVEN | RN, TELEMETRY |
| LOPEZ | ANGELA | RN, TELEMETRY |
| MUNOZ | TAMARA | RN, TELEMETRY |
| NAM | JISUN | RN, TELEMETRY |
| NGUYEN | DON | RN, TELEMETRY |
| NICOLAS | EMILY | RN, TELEMETRY |
| NOTARIO | ZACHARY | RN, TELEMETRY PD-1 |
| NYE | HAYLEY | RN, TELEMETRY |
| OUATTARA | NAGNINLTAHA | RN, TELEMETRY |
| PARK | CHUNG AH | RN, TELEMETRY |
| PARK | SUE | RN, TELEMETRY |
| PARUNGAO | ARLENE | RN, TELEMETRY |
| PESA | EVELYN | RN, TELEMETRY |
| POSUELOZ | ARIEL | RN, TELEMETRY |
| PRYOR | VINCENT | RN, TELEMETRY |
| RAMIREZ | EVELYN | RN, TELEMETRY |
| REDDIX | TRACY | CHARGE NURSE, TELEMETRY |
| SATO | ASAMI | RN, TELEMETRY |
| SEGISMUNDO | MAXINE | RN, TELEMETRY |

Exhibit A - 4

Exhibit 1
000080

verity.org



| Employee Last Name | First Name | Job Title |
|---|---|---|
| SENATIN | VADA FRANCEZCA | RN, TELEMETRY |
| SHIN | ALICE | RN, TELEMETRY |
| SHIN | ANNIE | RN, TELEMETRY |
| SHORT | JENNIFER | RN, TELEMETRY |
| SMITH-ANDERSON | EMMA | RN, TELEMETRY |
| SOK | MICHELLE | CHARGE NURSE, TELEMETRY |
| STUTZMAN | SHELBY | RN, TELEMETRY |
| TAKAMATSU | RIEKO | RN, TELEMETRY |
| VIDRIO | MARISELA | RN, TELEMETRY |
| WILLIAMS | MARIA | RN, TELEMETRY |
| WU | DEBORAH | RN, TELEMETRY |
| ABRISHAMIAN | MANDANA | RN, MED/SURG 6 |
| ADARO | VIDA | RN, MED/SURG 6 |
| ALIBUTOD | RODERICK | RN, MED/SURG 6 |
| BALCRUZ | THERESA | RN, MED/SURG 6 |
| BALINGIT | NORMITA | RN, MED/SURG 6 |
| BAYLON | RONEL | RN, MED/SURG 6 |
| BERANGO | NICOMEDES | RN, MED/SURG 6 |
| BOONE | LASHANDA | RN, MED/SURG 6 |
| BURCH | KATALEE | RN, MED/SURG 6 |
| CABANAS | JEANETTE | RN, MED/SURG 6 |
| CABAUATAN DUMAG | MICHELLE | CHARGE NURSE, MED/SURG 6 |
| CAO | JENNIFER | RN, MED/SURG 6 |
| CEMANESEVANGELISTA | CLARISSE | RN, MED/SURG 6 |
| CHOI | IN | RN, MED/SURG 6 |
| CHUNG | HA NIE | RN, MED/SURG 6 |

Exhibit A - 5

Exhibit 1
000081
verity.org



| Employee Last Name | First Name | Job Title |
|---|---|---|
| DORIA | MIRIAM | RN, MED/SURG 6 PD-1 |
| FITKOWSKI | ANDREW | RN, MED/SURG 6 |
| GARCIA | DOROTHY | RN, MED/SURG 6 |
| GONZALES | YVETTE | CHARGE NURSE, MED/SURG 6 |
| GUZMAN | JAMES BRIAN | RN, MED/SURG 6 |
| HAN | BONA | RN, MED/SURG 6 |
| ITANI | KAZUMI | RN, MED/SURG 6 |
| KATIGBAK | AGNES | RN, MED/SURG 6 |
| KIM | HYEON SOO | RN, MED/SURG 6 |
| LEE | BO | RN, MED/SURG 6 |
| LEE | JOMAR | RN, MED/SURG 6 |
| LEE | NAM | RN, MED/SURG 6 |
| LEE | ROBIN | RN, MED/SURG 6 |
| LEE | SARAH SO-YOUNG | RN, MED/SURG 6 |
| LEON | CINZIA | RN, MED/SURG 6 |
| LIM | ROWENA | RN, MED/SURG 6 |
| LO | CELINA | RN, MED/SURG 6 |
| LOPEZ | MA VICTORIA | RN, MED/SURG 6 |
| LUZURIAGA | RYAN | RN, MED/SURG 6 |
| MANALO | MARIA CECILIA | RN, MED/SURG 6 |
| MILIAN | RAMIRO | RN, MED/SURG 6 |
| ORANTE | CHRISTIAN | RN, MED/SURG 6 |
| ORIS | JACQUELINE | RN, MED/SURG 6 |
| OSE | TATIANA | RN, MED/SURG 6 |
| PALANCA | RYAN | RN, MED/SURG 6 |
| POSADAS | NIDA | RN, MED/SURG 6 |

Exhibit A - 6

Exhibit 1
000082
verity.org



| Employee Last Name | First Name | Job Title |
| --- | --- | --- |
| SALCEDO | CHERYL ANN | CHARGE NURSE, MED/SURG 6 |
| SEO | MOON HYANG | CHARGE NURSE, MED/SURG 6 |
| SIA | MARY ANN | RN, MED/SURG 6 |
| SOLIS | KARINA | RN, MED/SURG 6 |
| SONG | EUN | RN, MED/SURG 6 |
| SUH | YURI | RN, MED/SURG 6 |
| TRAN | DIEM | RN, MED/SURG 6 PD-3 |
| VASQUEZ | GRISELDA | RN, MED/SURG 6 |
| VERGARA | HERMIE | RN, MED/SURG 6 |
| ABAD | ROMEO | RN, MED/SURG 7 |
| ARSUA | AILEEN | RN, MED/SURG 7 |
| BIGASIN | JHOANNA | RN, MED/SURG 7 |
| BUENO | REGINALD | RN, MED/SURG 7 |
| CARRILLO | MARICELA | CHARGE NURSE, MED/SURG 7 |
| CHOI | ALICIA | RN, MED/SURG 7 |
| CHUA | MA SHEILA | RN, MED/SURG 7 |
| CORONA | DAISY | RN, MED/SURG 7 |
| CUBE | REALLINE | RN, MED/SURG 7 |
| DINSAY | ANNABELLE | RN, MED/SURG 7 |
| EHSAN | RAHAL | RN, MED/SURG 7 |
| GARCIA | SHERWIN | CHARGE NURSE, MED/SURG 7 |
| GO | EDWIN | RN, MED/SURG 7 |
| GONZALES | KRISTINE | RN, MED/SURG 7 |
| INTAL | MARIVIC GRACE | RN, MED/SURG 7 |
| KIM | BOOYOUNG | RN, MED/SURG 7 |
| LEGASPI | ROMMEL | RN, MED/SURG 7 |

Exhibit A - 7

Exhibit 1
000083
verity.org

Case 2:20-cv-02023-SVW   Document 1   Filed 03/05/19   Page 84 of 95   Page ID #:84



| Employee Last Name | First Name | Job Title |
|---|---|---|
| LORICA | RHODA | RN, MED/SURG 7 |
| MINGUEZ | MARY MAE | RN, MED/SURG 7 PD-1 |
| OBILLE | MARK | RN, MED/SURG 7 |
| OCAMPO | GEORGE | RN, MED/SURG 7 |
| RUIZ | JENNIE | RN, MED/SURG 7 |
| UCHE | PATRICIA | RN, MED/SURG 7 |
| UMALI | MARY KRISTINE L | RN, MED/SURG 7 |
| YU | FERNANDO II | RN, MED/SURG 7 |
| BAE | STELLA | RN, MED/SURG 7 KP |
| HA | DA YEONG | RN, MED/SURG 7 KP |
| JANG | JONGSOOK | RN, MED/SURG 7 KP |
| KIM | MEEYUN | RN, MED/SURG 7 KP |
| KO | HYANGMI | RN, MED/SURG 7 KP |
| LIM | SEUNGAE | RN, MED/SURG 7 KP |
| MALIT | CHERYL JOY | RN, MED/SURG 7 KP |
| MARTINEZ | KAREN KAYE | RN, MED/SURG 7 KP |
| SHIM | GEMMA | RN, MED/SURG 7 KP |
| BRACAMONTE | JESSICA | RN, ONCOLOGY |
| CAMPOS | YASMINI | RN, ONCOLOGY |
| CEBALLOS | VILMAR | RN, ONCOLOGY |
| CUARESMA | DENICE | RN, ONCOLOGY |
| DATOR | COSSETTE | RN, ONCOLOGY |
| ESTRADA | MARTIN | RN, ONCOLOGY |
| EVANGELISTA | ALLAN | CHARGE NURSE, ONCOLOGY |
| GILL | JAGVEER | RN, ONCOLOGY |
| MACAPAGAL | YOLANDA | RN, ONCOLOGY |

Exhibit A - 8

Exhibit 1
000084

verity.org



| Employee Last Name | First Name | Job Title |
|---|---|---|
| MANALO | EVELYN | RN, ONCOLOGY |
| PLAZO | JONATHAN | RN, ONCOLOGY |
| REBUYACO | ARIANNA | RN, ONCOLOGY |
| RODRIGUEZ | DENISE | RN, ONCOLOGY |
| TOLENTINO | CHONA | CHARGE NURSE, ONCOLOGY |
| AMPONG | GRANVILLE | RN, ACUTE REHAB |
| APELIZAN | PAULA LORENA | RN, ACUTE REHAB |
| BAE | YEAHEUN | RN, ACUTE REHAB |
| BOTE | ROMERO | RN, ACUTE REHAB |
| DADHANIA | AKRUTI | RN, ACUTE REHAB |
| GUMAYAGAY | VINA | RN, ACUTE REHAB |
| JANG | JI-YOUNG | RN, ACUTE REHAB |
| KIM | JUNGMIN | RN, ACUTE REHAB |
| NGUYEN | KELLY THUY-KHANH | RN, ACUTE REHAB |
| NOBLEFRANCA | CHITA | RN, ACUTE REHAB |
| PARK | ELLEN | RN, ACUTE REHAB |
| PASCUA | JULIA | RN, ACUTE REHAB |
| PERALTA | VIOLETA | RN, ACUTE REHAB |
| RANGEL | SANDRA | RN, ACUTE REHAB |
| SIAPNO | JOANN | RN, ACUTE REHAB |
| TICON-GALLARDO | MARY GRACE | RN, ACUTE REHAB |
| YAO | SUJUE | RN, ACUTE REHAB |
| ACOYMO | KERWIN | RN, EMERGENCY ROOM PD-3 |
| ADLAWAN-DOBLE | MARIA ROSELIE | RN, AUDITOR - EMER. ROOM 10/40 |
| ADRAYAN | GILBERT | RN, EMERGENCY ROOM PD-3 |
| AGUILAR | JUSTIN | RN, EMERGENCY ROOM PD-1 |

Exhibit A - 9

Exhibit 1
000085

verity.org

Case 2:20-cv-02023-SVW   Document 1   Filed 03/03/20   Page 86 of 95   Page ID #:86



| Employee Last Name | First Name | Job Title |
|---|---|---|
| ASTAKHINA | LYUDMYLA | RN, EMERGENCY ROOM |
| ATIENZA | JORDAN | RN, EMERGENCY ROOM |
| BAUTISTA | DINO LOREN | RN, EMERGENCY ROOM |
| CALIBOSO | MITCH DATOR | RN, EMERGENCY ROOM PD-2 |
| CANLAS | MICHAEL | RN, EMERGENCY ROOM PD-3 |
| CERVANTES | REDENTOR | CHARGE NURSE, EMERGENCY ROOM |
| CHAE | JEONG | RN, EMERGENCY ROOM |
| CHAN | ELAINE | RN, EMERGENCY ROOM PD-1 |
| CHO | ANDY | RN, EMERGENCY ROOM |
| CHOTAROONVIPHAT | LADDA | RN, EMERGENCY ROOM |
| DANIEL | JOANNA | RN, EMERGENCY ROOM |
| DAVIDSON | ALTHIA | RN, EMERGENCY ROOM |
| DIONISIO | BERNARD | RN, EMERGENCY ROOM PD-1 |
| IBARRA | JACOB | RN, EMERGENCY ROOM PD-3 |
| LIM | TERESA | RN, EMERGENCY ROOM |
| MANALO | ALEXIS | RN, EMERGENCY ROOM PD-2 |
| MENDOZA | KEIR | RN, EMERGENCY ROOM |
| MESA | ROCIO | RN, EMERGENCY ROOM |
| MOORE | PORTIA | RN, EMERGENCY ROOM |
| NAJARRO | NANCY | CHARGE NURSE, EMERGENCY ROOM |
| NICOLAS | ELI JOHN | RN, EMERGENCY ROOM PD-2 |
| OLYNYK | CELESTE | RN, EMERGENCY ROOM |
| ONYEJIJI | IJEOMA | RN, EMERGENCY ROOM |
| ORELLANA | GABRIELLA | RN, EMERGENCY ROOM |
| PENSERGA | MA BRENDA | RN, EMERGENCY ROOM |
| QUILA | REMIEL | CHARGE NURSE, EMERGENCY ROOM |

Exhibit A - 10

Exhibit 1
000086

verity.org

Case 2:20-cv-02625-SVW  Document 1  Filed 03/19/20  Page 89 of 95  Page ID #:87



| Employee Last Name | First Name | Job Title |
|---|---|---|
| QUITZON | MARIA | RN, EMERGENCY ROOM PD-3 |
| SALAZAR | GUSTAVO | RN, EMERGENCY ROOM PD-1 |
| SALDANA | MARIA | RN, EMERGENCY ROOM PD-1 |
| SANDIGAN | ULYSSES | CHARGE NURSE, EMERGENCY ROOM |
| SONG | JOO | RN, EMERGENCY ROOM |
| VALISNO SANCHEZ | MARIA | RN, EMERGENCY ROOM |
| ZABLAN | RODERICK | RN, EMERGENCY ROOM PD-1 |
| ABAD | JENNIFER | RN, POB DIALYSIS PD-3 |
| CHOI | MIRAN | RN, POB DIALYSIS |
| DE QUIROS | IVY LEE | RN, POB DIALYSIS PD-1 |
| LEE | YUN | RN, POB DIALYSIS PD-2 |
| LIM | REBECCA | RN, POB DIALYSIS |
| LIM | SEOKSOON | RN, POB DIALYSIS |
| OH | KYUNG SOON | RN, POB DIALYSIS |
| VILLAR | MARNIT | RN, POB DIALYSIS |
| ALDRETE | MANUEL | CHARGE NURSE, SHORT STAY |
| ARGUETA-CORDERO | FRANCISCO | RN, SHORT STAY |
| CHOI | PILL | RN, SHORT STAY |
| DERECI | MARY ANN | RN, SHORT STAY |
| GARCIA | RHODORA | RN, SHORT STAY |
| JIMENEZ | EVANGELINE | RN, SHORT STAY 12HR |
| KILALA | MARY JANE | RN, SHORT STAY |
| KIM | HYANGHEE | RN, SHORT STAY |
| LEE | HYAE JIN | RN, SHORT STAY |
| LIM | HYO | RN, SHORT STAY |
| PARK | JINSUN | RN, SHORT STAY |

Exhibit A - 11

Exhibit 1
000087

verity.org



| Employee Last Name | First Name | Job Title |
| --- | --- | --- |
| SHIN | SUNGMIN | RN, SHORT STAY |
| TAI | ELLEN | RN, SHORT STAY |
| BALINGIT | CORAZON | CHARGE NURSE, SURG & RECOVERY |
| CHANG | MARY | RN, SURG & RECOVERY |
| CRUDUP | IMANI | RN, SURG & RECOVERY |
| DEEGAN | GERARD | RN, SURG & RECOVERY |
| DUMLAO | TERESITA | RN, SURG & RECOVERY |
| EOM | HOKYOUNG | RN, SURG & RECOVERY |
| FAMILARA | MYRA | RN, SURG & RECOVERY PD-3 |
| HEO | GJIYOUNG | RN, SURG & RECOVERY |
| LYON | LORNA | RN, SURG & RECOVERY |
| MENDOZA | MARILOU | RN, SURG & RECOVERY |
| POSUELOZ | ARIEL | RN, SURG & RECOVERY |
| SANCHEZ | BEATRIZ | RN, SURG & RECOVERY |
| TAMANAHA | MA CORAZON | RN, SURG & RECOVERY |
| TAN | JULIE ANN | RN, SURG & RECOVERY |
| KANG | SO HEE | RN, SURG & RECOVERY 2 |
| MUZYCHUK | NELLI | RN, SURG & RECOVERY 2 |
| YUN | CHRISTINA | RN, SURG & RECOVERY 2 |
| CHO | MEONGHEE | RN, RECOVERY ROOM |
| CROWLEY | VALERIE | RN, RECOVERY ROOM |
| CUPP | CHRISTINE | RN, RECOVERY ROOM 10HR |
| NILO | VIDAL | RN, RECOVERY ROOM |
| ORAIS | GRECITA PRIMA | RN, RECOVERY ROOM |
| BAUTISTA PALANOG | MARICEL | RN, CATH LAB PD-1 |
| CROWLEY | VERONICA | RN, CATH LAB |

Exhibit A - 12

Exhibit 1
000088

verity.org



| Employee Last Name | First Name | Job Title |
|---|---|---|
| DUTTON | NOELLE | RN, CATH LAB (STEMI) |
| GERMINAL | GLADYS | RN, CATH LAB |
| HIPUS | JOSEFINA | RN, CATH LAB |
| KIM | SINSIL | RN, CATH LAB |
| LEE | EUNJIN | RN, CATH LAB |
| RUANTO | ROZALDO | RN, CATH LAB |
| VILLAROMAN | CHIQUI | RN, CATH LAB |
| ASSADI | AMIR | RN, INTERVENTIONAL RADIOLOGY |
| BAZAN | GERARDO | CHARGE NURSE, INTER. RADIOLOGY |
| MAYFIELD | CHRIS | RN, INTERVENTIONAL RADIOLOGY |
| BIRIOUKOV | LEONID | RN, ACUTE DIALYSIS PD-2 |
| CAISIP | THADEUS | RN, ACUTE DIALYSIS |
| DANG | PAULINE | RN, ACUTE DIALYSIS |
| DEL FIERRO | JOSEPH ARNEL | RN, ACUTE DIALYSIS |
| DORAN | CHARLES | RN, ACUTE DIALYSIS |
| GROEHLER | MIRA | RN, ACUTE DIALYSIS |
| KIM | GEUMCHUL | RN, ACUTE DIALYSIS |
| LEYRAN | NOEL | RN, ACUTE DIALYSIS |
| LICAYAN | SORIANO | RN, ACUTE DIALYSIS |
| OH | YESUL | RN, ACUTE DIALYSIS PD-3 |
| PARK | KI | RN, ACUTE DIALYSIS |
| ROH | HAE | RN, ACUTE DIALYSIS |
| SHIN | YOUNG SUK | RN, ACUTE DIALYSIS |
| THOMAS | CRISTINA | RN, ACUTE DIALYSIS |
| TULANDA | NSIMBA | RN, ACUTE DIALYSIS |
| DUMANSKY | ELENA | RN GI LAB-8/80 |

Exhibit A - 13

Exhibit 1
000089

verity.org

Case 2:20-cv-02053-SVW    Document 1    Filed 03/05/19    Page 95 of 95    Page ID #:90



| Employee Last Name | First Name | Job Title |
| --- | --- | --- |
| ESTELL | CORNELIA | CHARGE NURSE, GI LAB |
| LARGAESPADA | FRANCES | RN GI LAB-8/80 |
| AQUINO | HILDA | EDUCATOR, LEAD CLINICAL RN |
| CHUA | HONEE | EDUCATOR, CLINICAL RN 10HR |
| CERAOS | JERIC | RN, NURSING ADMIN |
| GOLORAN | PATRICIA | RN, NURSING ADMIN |
| REYES | JENNIE | RN, NURSING ADMIN |
| SANTIAGO | PATRICIA | RN, NURSING ADMIN |
| SANTIAGO | ZAYRA | RN, NURSING ADMIN |
| WILSON | MICHELLE | RN, NURSING ADMIN |
| ALWAN | ALEXZANDRIA | RN, CASE MANAGEMENT PD-3 |
| BALUYOT | VANESSA FAYE | RN, CASE MANAGEMENT |
| CHANG | AH YEON | RN, CASE MANAGEMENT |
| CHOI | BO YEON | RN, CASE MANAGEMENT PD-1 |
| CRUZ | LIEZL | RN, CASE MANAGEMENT PD-1 |
| ENRIQUEZ | VERE JONAS | RN CASE MANAGEMENT |
| LEMUS | LITA | RN, CASE MANAGEMENT |
| LENON | AUDREY | RN, CASE MANAGEMENT |
| LUISTRO | ROMEO | RN, CASE MANAGEMENT |
| MADLANGBAYAN | HAYCELYN | RN, CASE MANAGEMENT |
| MCFARLAND | ALLEN GRACE | RN, CASE MANAGEMENT |
| MOJARRO | YARETH | RN, CASE MANAGEMENT PD-2 |
| OANDASAN | JAYCEL | RN, CASE MANAGEMENT |
| RAMOS | SHEILA | RN, CASE MANAGEMENT |
| SAMSON | TIFFANY | RN, CASE MANAGEMENT PD-1 |
| SANTOS | ROSEMARIE | RN, CASE MANAGEMENT |

Exhibit A - 14

Exhibit 1
000090

verity.org



| Employee Last Name | First Name | Job Title |
|---|---|---|
| TEVES | RIA | RN, CASE MANAGEMENT PD-1 |
| YANG | MARIA ROSELLE | RN, CASE MANAGEMENT PD-1 |

Exhibit A - 15

Exhibit 1
000091

verity.org

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

| Other Relief Sought |
|---|

Exhibit 1
000092

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Exhibit 1
000093

1
2

## PROOF OF SERVICE

3
4

**STATE OF CALIFORNIA, COUNTY OF ALAMEDA**

5
6

    At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 155 Grand Ave., Oakland, CA 94612.

7
8
9
10
11

On March 19, 2020, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR WITHDRAWAL OF REFERNCE OF ADVERSAY PROCEEDINGS PENDING IN BANKRUPTCY COURT** on the interested parties in this action as follows:

12
13
14
15
16
17
18

**BY OVERNIGHT MAIL**: I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the California Nurses Association's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the UPS, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Oakland, California.

19
20
21

The Honorable Ernest M. Robles
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

22
23
24

Office of the United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

25
26
27
28

**BY E-MAIL OR ELECTRONIC TRANSMISSION**: I caused a copy of the document(s) to be sent from e-mail address ttschneaux@calnurses.org to the persons at the e-mail addresses listed in below. The document(s) were transmitted at or before 5:00 p.m. I did not receive, within a reasonable time after the

94

transmission, any electronic message or other indication that the transmission was unsuccessful:

DEFENDANT: Richard Adcock, Verity Health Systems of California-
      aruda@bzbm.com
DEFENDANT: Steven Sharrer, Verity Health
      aruda@bzbm.com
DEFENDANT: De Paul Ventures, LLC
      sam.alberts@dentons.com
DEFENDANT: St. Francis Medical Center, a California nonprofit public benefit
      corporation sam.alberts@dentons.com
DEFENDANT: St. Vincent Medical Center, a California nonprofit public benefit
      corporation sam.alberts@dentons.com
DEFENDANT: St. Vincent Dialysis Center, Inc.
      sam.alberts@dentons.com
DEFENDANT: Seton Medical Center, a California nonprofit public benefit
      corporation sam.alberts@dentons.com
DEFENDANT: Verity Health Systems of California, Inc., a California nonprofit
      public benefit corporation sam.alberts@dentons.com
DEFENDANT: Verity Holding, LLC, a California limited liability company
      sam.alberts@dentons.com

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 19, 2020, at Oakland, California.


                  /s/Tym Tschneaux_____
                  Tym Tschneaux